# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 96-3170

_____

Candace J. Wilson,

       Appellant,

   v.

Wayne Zoellner,

       Appellee.

Appeal from the United States
District Court for the
Eastern District of Missouri.

_____

Submitted:  January 14, 1997

Filed:  May 21, 1997

_____

Before WOLLMAN, HEANEY, and MAGILL, Circuit Judges.

_____

MAGILL, Circuit Judge.

After unsuccessfully bringing suit against The Prudential Insurance Company (Prudential) to recover medical expenses under an insurance policy, see Wilson v. Prudential Ins. Co., 97 F.3d 1010 (8th Cir. 1996), Candace J. Wilson brought this action in Missouri state court against Wayne J. Zoellner for Zoellner's alleged negligent misrepresentation of the scope of coverage of the insurance policy.  Zoellner removed the case to the United States District Court for the Eastern District of Missouri.  The district court dismissed the Missouri state common-law tort action on the basis of the Employee Retirement Income Security Act's (ERISA) preemption clause, see 29 U.S.C. § 1144(a) (1994), and Wilson now

appeals. Because we conclude that Wilson's action has not been preempted by ERISA, we reverse.

## I.

Wilson worked for Midway Dairy Farms II (Midway) in Missouri as an agricultural laborer. During the summer of 1993, Zoellner, working as an agent for Prudential, sold Midway a health insurance policy from Prudential for Midway's employees. Wilson alleges that Midway specifically sought a policy that would cover work-related injuries and that Zoellner misrepresented to Midway that the Prudential policy would cover such injuries.

On August 22, 1994, Wilson was severely injured while working at Midway. As a result of her injuries, Wilson was paralyzed and incurred significant and ongoing medical expenses. Prudential denied benefits to Wilson because its policy with Midway excluded coverage for work-related injuries. Wilson brought suit against Prudential in federal court to recover under the policy, and this Court held that Prudential had correctly interpreted the policy and had properly denied benefits. See Wilson, 97 F.3d at 1011.

On February 20, 1996, Wilson brought this Missouri state common-law tort action in the Circuit Court of Cape Girardeau County, Missouri, against agent Zoellner to recover damages for Zoellner's alleged negligent misrepresentations regarding the Prudential policy's scope of coverage. Zoellner removed the case to the United States District Court for the Eastern District of Missouri, alleging that Wilson's claims were preempted by ERISA. The district court granted summary judgment to Zoellner on July 17, 1996, holding that Wilson's claims were preempted by ERISA. Wilson now appeals.

## II.

Wilson argues that the district court incorrectly held that ERISA preempted her Missouri state common-law tort claim against Zoellner for negligent misrepresentation. We agree. "We review the District Court's decision on ERISA preemption de novo because it is a question of federal law involving statutory interpretation." In Home Health, Inc. v. Prudential Ins. Co., 101 F.3d 600, 604 (8th Cir. 1996).

ERISA, codified at 29 U.S.C. §§ 1001-1461 (1994), "is a comprehensive statute that sets certain uniform standards and requirements for employee benefit plans." Arkansas Blue Cross & Blue Shield v. St. Mary's Hosp., Inc., 947 F.2d 1341, 1343 n.1 (8th Cir. 1991) (Arkansas Blues). Congress enacted ERISA to

> protect interstate commerce and the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts.

29 U.S.C. § 1001(b) (1994). To meet the goals "'of a comprehensive and pervasive Federal interest and the interests of uniformity with respect to interstate plans,'" Congress included an express preemption clause in ERISA for "'the displacement of State action in the field of private employee benefit programs.'" Morstein v. National Ins. Servs., Inc., 93 F.3d 715, 719 n.6 (11th Cir. 1996) (en banc) (Morstein II) (quoting 120 Cong. Rec. 29,942 (1974) (comments by Senator Javits)), cert. denied, 117 S. Ct. 769 (1997).

ERISA's preemption clause provides:

> Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter <u>shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan</u> described in section 1003(a) of this title and not exempt under section 1003(b) of this title. . . .

29 U.S.C. § 1144(a) (emphasis added). In analyzing this clause, the Supreme Court has "long acknowledged that ERISA's pre-emption provision is clearly expansive." <u>California Labor Standards Enforcement v. Dillingham Constr.</u>, 117 S. Ct. 832, 837 (1997) (quotations and citations omitted). The Supreme Court has variously described the ERISA preemption clause as having "a broad scope, and an expansive sweep, and [as being] broadly worded, deliberately expansive, and conspicuous for its breadth." <u>Id.</u> (quotations and citations omitted).

The Supreme Court, in considering the standard for preemption enunciated in § 1144(a), has also noted that:

> If [§ 1144(a)'s] "relate to" [language] were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes pre-emption would never run its course, for really, universally, relations stop nowhere. But that, of course, would be to read Congress's words of limitation as mere sham, and to read the presumption against pre-emption out of the law whenever Congress speaks to the matter with generality.

<u>New York Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.</u>, 115 S. Ct. 1671, 1677 (1995) (<u>New York Blues</u>). <u>See also</u> <u>Dillingham</u>, 117 S. Ct. at 843 (Scalia, J., concurring) ("But applying the 'relate to' provision [of ERISA's preemption clause] according to its terms was a project doomed to failure, since, as many a curbstone philosopher has observed, everything is related to everything else."). Accordingly, notwithstanding § 1144(a)'s broad language, "[s]ome state actions may affect employee benefit plans

-4-

in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 100 n.21 (1983).

In applying § 1144(a), the Supreme Court has created a two-part inquiry to determine whether a state law "relates to" an employee benefit plan covered by ERISA. See Dillingham, 117 S. Ct. at 837. Under this test, "[a] law 'relates to' a covered employee benefit plan for purposes of § [1144(a)] if it (1) has a connection with or (2) reference to such a plan." Id. (quotations, citations, and alterations omitted). We address the "reference" prong of the Supreme Court's "relates to" analysis first.

**A.**

Where a state law "impos[es] requirements by reference to ERISA covered programs[,] . . . that reference will result in preemption." Dillingham, 117 S. Ct. at 837-38 (quotations, citations, and alterations omitted). A state law has such a prohibited reference to an ERISA plan if the state law "acts immediately and exclusively upon ERISA plans . . . or where the existence of ERISA plans is essential to the law's operation . . . ." Dillingham, 117 S. Ct. at 838.

We have previously addressed whether the Missouri state common-law tort of negligent misrepresentation contains a

-5-

"reference to ERISA."  See In Home Health, 101 F.3d at 602.[1]  The In Home Health court noted that

> [t]o maintain a cause of action for negligent misrepresentation under Missouri law, one must show (1) that the speaker supplied information in the course of the speaker's business or because of some other pecuniary interest;  (2) that, due to the speaker's failure to exercise reasonable care or competence in obtaining or communicating this information, the information was false;  (3) that the speaker intentionally provided the information for the guidance of a limited group of persons in a particular business transaction;  (4) that the listener justifiably relied on the information;  and (5) that as a result of the listener's reliance on the statement, the listener suffered a pecuniary loss.

In Home Health, 101 F.3d at 602 n.2 (citing Colgan v. Washington Realty Co., 879 S.W.2d 686, 689 (Mo. App. 1994)).  Upon considering these elements of the tort, we concluded "that the state common law on negligent misrepresentation is of general application.  It does not actually or implicitly refer to ERISA plans.  The state law on misrepresentation . . . is of general application as it makes no reference to and functions irrespective of the existence of an ERISA plan."  Id. at 605 n.6 (quotations and citations omitted).  Because "the existence of ERISA plans" is not essential to the operation of Missouri state common-law tort of negligent

---

[1]In In Home Health, Inc. v. Prudential Ins. Co., 101 F.3d 600 (8th Cir. 1996), medical services were provided to a Prudential Insurance Company (Prudential) policy-holder by In Home Health, Inc. (Home Health).  Home Health alleged that Prudential negligently misrepresented to Home Health the amount of coverage available to the policy-holder under the Prudential policy.  As a result of Prudential's alleged misrepresentations, Home Health provided $40,000 worth of services to the policy-holder that were not covered by Prudential's policy.  Home Health brought suit in Missouri state court under a theory of negligent misrepresentation to recover the costs for these services.  After removal to the federal court, this Court concluded that Home Health's Missouri state common-law tort action for negligent misrepresentation was not preempted by ERISA.  See id. at 604-07.

misrepresentation, <u>Dillingham</u>, 117 S. Ct. at 838, and because the tort of negligent misrepresentation does not "impos[e] requirements by reference to ERISA covered programs," <u>id.</u> at 837 (quotations, citations, and alterations omitted), nor "acts immediately and exclusively upon ERISA plans," <u>id.</u> at 838, Wilson's tort action for negligent misrepresentation against Zoellner is not preempted by ERISA on the basis of any reference to ERISA.

**B.**

Because the Missouri tort of negligent misrepresentation does not contain a prohibited reference to an ERISA plan, we must determine if Wilson's action against Zoellner has a prohibited "connection" with an ERISA plan. In deciding "whether a state law has [a] forbidden connection" to an ERISA plan, the Supreme Court has directed us to "look both to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive, as well as to the nature of the effect of the state law on ERISA plans." <u>Dillingham</u>, 117 S. Ct. at 838 (quotations and citations omitted).

In addressing the effect of a state law on an ERISA plan, this Court has considered a variety of factors, including:

> [1] whether the state law negates an ERISA plan provision, [2] whether the state law affects relations between primary ERISA entities, [3] whether the state law impacts the structure of ERISA plans, [4] whether the state law impacts the administration of ERISA plans, [5] whether the state law has an economic impact on ERISA plans, [6] whether preemption of the state law is consistent with other ERISA provisions, and [7] whether the state law is an exercise of traditional state power.

–7–

<u>Arkansas Blues</u>, 947 F.2d at 1344-45 (citations omitted).  In conducting this analysis, "[t]he court must still look to the totality of the state statute's impact on the [ERISA] plan--both how many of the factors favor preemption and how heavily each individual factor favors preemption are relevant."  <u>Id.</u> at 1345.

### i. The negation of an ERISA plan provision.

We conclude that no provisions in Prudential's policy with Midway would be negated by allowing Wilson's tort action to proceed against Zoellner for his alleged negligent misrepresentation of the scope of coverage of the policy.[2]  In applying this first factor in <u>In Home Health</u>, we explained that:

> We respectfully disagree with the District Court that allowing Home Health's claim for negligent misrepresentation would negate a plan provision.  Home Health is not suing for plan benefits.  It is suing for Prudential's misrepresentation that Rich had not exceeded his $1 million limit of benefits. Home Health is not alleging that Rich is entitled to more than the $1 million in benefits provided by the plan.  Prudential has not represented that the plan would be responsible for any judgment Home Health may recover against Prudential.  Allowing Home Health to proceed with its claim for negligent misrepresentation would not negate any plan provision.

101 F.3d at 605.  In the instant case, Wilson is similarly not seeking benefits under the Prudential policy.  Indeed, Wilson's claim to plan benefits was conclusively decided by this Court in

---

[2]Because the parties did not include Prudential's plan with Midway in the joint appendix or their addendums, we have had to take judicial notice of a copy of the plan that was included in the appendices for Wilson's appeal in <u>Wilson v. Prudential Ins. Co.</u>, 97 F.3d 1010 (8th Cir. 1996).  In examining this plan, we can find no specific provision regarding tortious acts committed by insurance agents during the marketing of the plan.

Wilson v. Prudential Ins. Co., 97 F.3d 1010 (8th Cir. 1996), and Wilson has not attempted to relitigate the issue of the scope of the Prudential policy's coverage. Wilson is seeking nothing from the ERISA plan itself, and it does not appear that Wilson's action in tort negates any provision contained in the Prudential policy.

ii. The affect on relations between primary ERISA entities and the impact on the structure of the ERISA plan.

Next, it is apparent that Wilson's tort claim neither affects the relations between primary ERISA entities nor impacts on the structure of the ERISA plan. See Arkansas Blues, 947 F.2d at 1346 (treating "these two factors as identical" (footnote omitted)). The primary ERISA entities include "the employer, the plan, the plan fiduciaries, and the beneficiaries." Id. In this case, Midway--Wilson's former employer--will not be affected by Wilson's suit against Zoellner. Nor does it appear that the plan or the plan fiduciaries will be affected; as we have stated above, the plan is not responsible for Wilson's medical expenses under its own terms, see Wilson, 97 F.3d at 1011, and Zoellner's alleged oral representations to Midway could not modify the plan. See United Paperworkers Int'l Union v. Jefferson Smurfit Corp., 961 F.2d 1384, 1386 (8th Cir. 1992) (Noting that allowing oral representations to modify written terms of an ERISA plan "would be contrary to congressional intent, contrary to public policy, and contrary to the primary purpose of ERISA. The ERISA requirement that terms of a welfare benefit plan be committed to writing was intended to insure that employees could rely on the terms of the formal written plan provided to them without fear that unwritten, contrary terms would later surface.").

Zoellner suggests that, because he was an agent of Prudential when he allegedly misrepresented the scope of the Prudential

policy's coverage, Prudential will ultimately be liable for any damages levied against Zoellner.  <u>See</u> Appellee's Br. at 16.  Because Prudential is a fiduciary of the Prudential policy with Midway, Zoellner apparently argues that allowing Wilson to recover against Zoellner would affect a fiduciary's relation to a beneficiary, and should therefore be preempted. We reject this argument.

If Prudential incurs any liability as a result of this suit, it will do so only as the employer of a tortfeasor, and not as a plan fiduciary. Prudential will not be liable in any way for its administration of the ERISA plan, but rather for the coincidental and unrelated conduct of its agent.  Because Prudential does not face any liability incurred by its role as an ERISA entity, its relationship with other ERISA entities cannot be affected by Wilson's suit.  <u>See</u> <u>In Home Health</u>, 101 F.3d at 606 ("Prudential has not represented that the plan would be required to indemnify it for any damages Home Health may recover for Prudential's negligent misrepresentations.  Thus, a recovery by Home Health against Prudential would not impact the structure of the ERISA plan or affect relations between primary ERISA entities."); <u>Alacare Home Health Servs., Inc. v. The Prudential Ins. Co.</u>, 1997 WL 121209 at *2 (M.D. Ala. Mar. 4, 1997) ("[A]ny liability that may lie against Prudential [for the negligent misrepresentation of a Prudential agent] would arise under theories of agency.  The law is clear that fraud claims against an insurance agent who solicits participation in an ERISA plan are not preempted under ERISA.  It is a reasonable extension of that legal standard that claims against the agency employer of that agent, based on the agency's status as employer only, should not be preempted since such claims do not affect the relations among the principal ERISA entities as such." (quotations, citations, and footnote omitted)).

<u>iii.  Impact on the administration of the ERISA plan.</u>

Nor will Wilson's suit against Zoellner impact on the administration of the ERISA plan.  Wilson's action is premised on alleged misrepresentations by Zoellner prior to the existence of the ERISA plan. We fail to see how allowing Wilson to recover for pre-plan tortious conduct could prevent plan administrators from carrying out their duties, nor how it could impose new duties on plan administrators, nor how it could require plan administrators to carry out their existent duties in some different way.  Accordingly, this factor does not favor preemption.  See <u>In Home Health</u>, 101 F.3d at 606 ("Allowing Home Health to proceed with its claim for negligent misrepresentation would not impose any additional administrative duties upon Prudential or require a change in administrative procedures.  Therefore, this factor does not support a finding that ERISA preempts Home Health's state law claims.").

<u>iv.  The economic impact on the ERISA plan.</u>

Wilson's action against Zoellner will not have any direct economic impact on the ERISA plan.  As explained above, the written terms of Wilson's ERISA plan will not cover her medical expenses, <u>see</u> <u>Wilson</u>, 97 F.3d at 1011, and the ERISA plan could not be modified by Zoellner's alleged misrepresentations.  See <u>United Paperworkers</u>, 961 F.2d at 1386. While the costs associated with marketing and selling ERISA plans could be influenced by allowing claims to proceed against insurance agents for negligent misrepresentation, we do not believe that this indirect economic influence on an ERISA plan is a significant factor favoring preemption. See <u>New York Blues</u>, 115 S. Ct. at 1679 ("An indirect economic influence, however, does not bind plan administrator to

any particular choice and thus function as a regulation of an ERISA plan itself . . . ."). As the Morstein II court explained:

> [T]he possibility that insurance premiums will be higher or that insurance will be more difficult to obtain because independent agents will have less incentive to sell insurance to employers whose employee benefit plans will be governed by ERISA, does not provide a reason to preempt state laws that place liability on agents for fraud. These same agents currently face the threat of state tort claims if they make fraudulent misrepresentations to individuals and entities not governed by ERISA. To hold these agents accountable in the same way when making representations about an ERISA plan merely levels the playing field.

93 F.3d at 723.

v. Consistency of preemption with other ERISA provisions.

While we do not believe that the preemption of Wilson's suit is strongly supported by any specific provision of ERISA, we cannot say that preemption would be inconsistent with, or directly contrary to, any relevant provisions. Accordingly, this factor does not support either preemption or nonpreemption.

vi. The exercise of a traditional state power.

Finally, we consider whether Missouri's common-law tort of negligent misrepresentation is an exercise of traditional state power. See Dillingham, 117 S. Ct. at 838 ("As is always the case in our pre-emption jurisprudence, where federal law is said to bar state action in fields of traditional state regulation we have worked on the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." (quotations, citations, and alterations omitted)).

-12-

In this case, it is apparent that Missouri exercises a "traditional state power" in adjudicating claims of negligent misrepresentation in its courts. Missouri has long recognized the tort of negligent misrepresentation. See, e.g., Luikart v. Miller, 48 S.W.2d 867, 868 (Mo. 1932) ("In order to make out a case for fraudulent representations, it is not necessary that the defendant shall have had actual knowledge that the facts stated by him were false. It is sufficient that he made such representations with the consciousness that he was without knowledge as to their truth or falsity, when in fact they were false.") (citing cases); Peters v. Lohman, 156 S.W. 783, 788 (Mo. 1913) ("The law affords remedies for the consequence of innocent misrepresentation." (quotations and citation omitted)).

"That the States traditionally regulated these areas would not alone immunize their efforts; ERISA certainly contemplated the pre-emption of substantial areas of traditional state regulation." Dillingham, 117 S. Ct. at 840. However, Missouri's efforts to prevent sellers of goods and services, including benefit plans, from misrepresenting the contents of their wares or the scope of their services is "quite remote from the areas with which ERISA is expressly concerned--reporting, disclosure, fiduciary responsibility, and the like." Id. (quotations and citations omitted). Because "[a] reading of § [1144(a)] resulting in the pre-emption of traditionally state-regulated substantive law in those areas where ERISA has nothing to say would be unsettling," id. (quotations and citations omitted), we believe that this factor does not support a finding of preemption.

Weighing these various factors together, we conclude that this Missouri state common-law tort action against an insurance agent for his alleged negligent misrepresentation of the scope of coverage of an employee benefit plan does not have a sufficient

connection to the ERISA plan to require a finding of preemption.  We believe that this is particularly true in light of the declared purpose of ERISA: "to protect interstate commerce and the interests of participants in employee benefit plans and their beneficiaries . . . ."  29 U.S.C. § 1001(b).  As the court in Morstein II explained:

> Allowing preemption of a fraud claim against an individual insurance agent will not serve Congress's purpose for ERISA. As we have discussed, Congress enacted ERISA to protect the interests of employees and other beneficiaries of employee benefit plans.  To immunize insurance agents from personal liability for fraudulent misrepresentation regarding ERISA plans would not promote this objective.  If ERISA preempts a beneficiary's potential cause of action for misrepresentation, employees, beneficiaries, and employers choosing among various plans will no longer be able to rely on the representations of the insurance agent regarding the terms of the plan.  These employees, whom Congress sought to protect, will find themselves unable to make informed choices regarding available benefit plans where state law places the duty on agents to deal honestly with applicants.

93 F.3d at 723-24 (citations omitted).

Because Wilson's Missouri state common-law tort action against Zoellner for negligent misrepresentation has neither a reference to an ERISA plan, nor a sufficient connection with an ERISA plan, ERISA does not preempt her suit.  See Dillingham, 117 S. Ct. at  837.  Our conclusion that ERISA does not preempt Wilson's suit against Zoellner is supported by compelling case law from several other circuits.  In Morstein II, a unanimous en banc decision, the Eleventh Circuit held that ERISA did not preempt an employer's suit against an insurance agent for an alleged negligent misrepresentation concerning the scope of coverage of a proposed employee benefit plan.  See 93 F.3d at 716.  In reaching this

conclusion, the Eleventh Circuit overruled prior decisions, see, e.g.,
Farlow v. Union Cent. Life Ins. Co., 874 F.2d 791 (11th Cir. 1989), and
vacated a prior panel decision, see Morstein v. National Ins. Servs., Inc.,
74 F.3d 1135 (11th Cir. 1996) (Morstein I), vacated, 81 F.3d 1031 (11th
Cir. 1996), which had held that ERISA preempted suits against insurance
agents for negligent misrepresentation involving ERISA plans.[3]

A similar conclusion was reached by the Fifth Circuit.  See Perkins
v. Time Ins. Co., 898 F.2d 470 (5th Cir. 1990).  The Perkins court held
that, while a beneficiary's suit against a plan fiduciary for tortious
breach of contract was preempted by ERISA,

> the same cannot necessarily be said, however, as regards
> [insurance agent] Davis's solicitation of Perkins, which
> allegedly induced him to forfeit an insurance policy that
> covered his daughter's condition for one that did not.  While
> ERISA clearly preempts claims of bad faith as against insurance
> companies for improper processing of a claim for benefits under
> an employee benefit plan, and while ERISA plans cannot be
> modified by oral representations, we are not persuaded that
> this logic should extend to immunize agents from personal
> liability for their solicitation of potential participants in
> an ERISA plan prior to its formation.  Giving the ERISA
> "relates to" preemption standard its common-sense meaning, we
> conclude that a claim that an insurance agent fraudulently
> induced an insured to surrender coverage under an existing
> policy, to participate in an ERISA plan which did not provide
> the promised coverage, "relates to" that plan only indirectly.
> A state law claim of that genre, which does not affect the
> relations among the principal ERISA entities (the employer, the
> plan fiduciaries, the plan, and the beneficiaries) as such, is
> not preempted by ERISA.

---

[3]In concluding that ERISA preempted Wilson's suit in the
instant case, the district court relied heavily on the now-
vacated decision in Morstein I.  See Order at 4-5 (July 17,
1996), reprinted in Appellee's Add. at 4-5.

Id. at 473 (citations omitted).  See also Perry v. P*I*E Nationwide, Inc., 872 F.2d 157, 162 (6th Cir. 1989) (holding that ERISA did not preempt misrepresentation claims by employees who participated in an employee benefits plan).

### III.

Considering the totality of the circumstances in this case, the potential impact of Wilson's suit against Zoellner on the "employee benefit plan[ is] too tenuous, remote, or peripheral . . . to warrant a finding that the law 'relates to' the plan."  Shaw, 473 U.S. at 100 n.21. Accordingly, we hold that ERISA does not preempt Wilson's suit against Zoellner for the Missouri state common-law tort of negligent misrepresentation.[4]  We reverse the

---

[4]Zoellner suggests that comments in two prior opinions by this Court support a finding of preemption.  In Consolidated Beef Indus. v. New York Life Ins. Co., 949 F.2d 960 (8th Cir. 1991), this Court stated that:

> CBI's claims, such as inaccurate billings, incorrect interest rates and lack of accurate annual statements to plan participants, arise directly from the administration of the plan.  CBI attempts to argue that NYL should have foreseen these difficulties and thus its claims arose pre-plan and are not pre-empted.  This assertion is simply not supported by the record because CBI's primary concern is whether the plan was properly administered.  Additionally, even if CBI's claims involved misrepresentation in the sale of the § 401(k) program, its claims still relate to the employee benefit plan.

Id. at 964 (emphasis added).  See also Fink v. Union Cent. Life Ins. Co., 94 F.3d 489, 493 (8th Cir. 1996) ("We think the claims [for misrepresentation by an insurance agent in the sale of an insurance policy] are probably preempted, but summary judgment would be proper anyway because there is no evidence [that the insurance agent] acted wrongfully during the sale of the [insurance] policy." (citing Consolidated Beef)).

Zoellner conceded at oral argument that these statements were mere obiter dicta, and we agree.  See Boyer v. County of

district court's grant of summary judgment against Wilson.  Because federal jurisdiction was based solely on ERISA preemption, we remand this matter to the district court "with instructions to remand to the state court of Missouri for determination of the state claims originally filed in that court."  In Home Health, 101 F.3d at 607.

        A true copy.

                Attest:


                    CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

Washington, 971 F.2d 100, 102 n.4 (8th Cir. 1992) (per curiam) (statement in prior case "was not necessary to decide the issue in the case and is not binding authority here"); John Morrell & Co. v. Local Union 304A, 913 F.2d 544, 550 (8th Cir. 1990) ("This panel is bound by Eighth Circuit precedent.  We need not follow dicta, however, and we are satisfied that the language identified by the Unions in our earlier Morrell opinion was not essential to the judgment in that case." (citation omitted)).  Considering the statements in Consolidated Beef and Fink as persuasive authority, see Fix Fuel & Material Co. v. Wabash R.R. Co., 243 F.2d 110, 114 (8th Cir. 1957) (noting that this Court's statements in dicta "may not be disregarded but are entitled to respectful consideration"), we nevertheless conclude that Wilson's suit is not preempted by ERISA.

-17-