**John STETSON, et al., Plaintiffs,**

v.

**PFL INSURANCE CO.,
et al., Defendants.**

**Civil No. 97–392–P–C.**

United States District Court,
D. Maine.

July 8, 1998.

Louise K. Thomas, Jared S. Des Rosiers, Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Portland, ME, for Plaintiffs.

John F. Lambert Jr., Lambert, Coffin, Rudman & Hochman, Portland, ME, for Defendants.

## MEMORANDUM OF DECISION AND ORDER

GENE CARTER, District Judge.

Plaintiffs John and Bonnie Stetson brought this suit in Cumberland County Superior Court, alleging breach of contract, intentional and negligent misrepresentation, intentional and negligent infliction of emotional distress, and violations of the Maine Deceptive Trade Practices Act, 10 M.R.S.A. §§ 1211–16, and the Maine Unfair Trade Practices Act, 5 M.R.S.A. §§ 205–A—214.[1] Defendants PFL Life Insurance Company ("PFL"), United Group Association, Inc. ("UGA"), and Linda Housel ("Housel") removed the action to this Court pursuant to 28 U.S.C. §§ 1441(a) and (b) and 1446 (Docket No. 1).[2] Now before the Court is Defendants' Motion for Summary Judgment (Docket No. 18), in which Defendants seek summary judgment on the ground that Plaintiffs' state law claims are preempted by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* For the reasons set forth below, the Court will deny Defendants' Motion for Summary Judgment.

## I. BACKGROUND

This case arises from misrepresentations allegedly made by Housel to Mr. Stetson during her efforts to sell a PFL health insurance policy to Mr. Stetson's employer, Hebert's Auto Service. At the time of the alleged misrepresentations, the employees of Hebert's Auto Service were covered by a group health insurance policy issued by Travelers Insurance Company. Plaintiffs' Statement of Material Facts ("Plaintiffs' Statement") (Docket No. 26) ¶ 5; Defendants' Statement of Material Facts ("Defendants' Statement") (Docket No. 19) ¶ 1. The employer paid the premiums for its employees; Mr. Stetson paid for coverage for his wife and children. Defendants' Statement ¶ 3. In August 1996, Housel made a sales presentation to the employees of Hebert's Auto Service and encouraged them to abandon their Travelers group health insurance policy in favor of a PFL policy. Plaintiffs' Statement ¶ 6; Defendants' Statement ¶ 5. At the time Housel solicited Hebert Auto Service's employees, she was acting as an agent of PFL. Plaintiffs' Statement ¶ 7; Defendants' Statement ¶ 8. UGA had a contractual relationship with PFL to sell its policies, and Housel had a contractual relationship with UGA to sell PFL health insurance policies in Maine. Plaintiffs' Statement ¶¶ 2–3.

Plaintiffs allege that Housel made three primary misrepresentations during her sales presentation. First, they assert that she represented to the Hebert's Auto Service employees that the PFL health insurance

---

1. Plaintiffs have since dismissed their claim for breach of contract. *See* Plaintiffs' Memorandum in Opposition to Defendants' Motion for Summary Judgment ("Plaintiffs' Memorandum") (Docket No. 25) at 4 n. 2.

2. Since the removal of the action to this Court, Plaintiffs have added UICI, UGA's successor company, as a defendant in this action. *See* Amended Complaint (Docket No. 37).

policy would be as good as, if not better than, their current Travelers policy. Plaintiffs' Statement ¶ 8. Second, they claim Housel represented that if the employees purchased PFL's "Accident Benefit Expense Rider," they would be covered 100% in the event of an accident. *Id.* Finally, they assert that Housel, after checking with her supervisor, assured Mr. Stetson that Mrs. Stetson's weekly psychotherapy treatment would be covered by the PFL policy. *Id.* ¶ 9. Housel denies that she made any of the alleged misrepresentations. *Id.* ¶ 17.

The employees of Hebert's Auto Service decided almost unanimously to surrender their Travelers policy in favor of the PFL policy, which took effect on October 1, 1996. Plaintiffs' Statement ¶¶ 11–12; Defendants' Statement ¶ 6. When Mrs. Stetson's treating physician submitted a claim for Mrs. Stetson's psychotherapy in November 1996, PFL denied the claim, indicating that the policy did not provide coverage for the treatment. Plaintiffs' Statement ¶ 13. On January 11, 1997, Mr. Stetson was seriously injured in a snowmobile accident and was hospitalized for a week and a half. *Id.* ¶ 14. Upon discharge, he required a back brace and physical therapy. *Id.* His medical costs relating to the accident totaled in excess of $65,000. *Id.* Mr. Stetson submitted a claim to PFL for all of the medical expenses arising from his accident. *Id.* ¶ 15. The PFL policy covered only $14,000 of Mr. Stetson's $27,000 hospital bill and did not cover his back brace or physical therapy at all.[3] *Id.* The Stetsons now owe over $40,000 in medical bills relating to Mrs. Stetson's psychotherapy and Mr. Stetson's snowmobiling accident. *Id.* ¶ 16. The employees of Hebert's Auto Service dropped PFL as their health insurer in the summer of 1997. *Id.* ¶ 18. In November 1997, the Stetsons brought this suit seeking damages for the results of Housel's allegedly tortious conduct. Defendants argue that Plaintiffs' state law claims are preempted by ERISA.

**3.** The PFL policy contains a $600 limitation on the Accident Benefit Expense Rider, no coverage for office visits or physical therapy outside of a hospital, and certain limitations and caps for hospitalization. Plaintiffs' Statement ¶ 15.

## II. STANDARD

In determining a motion for summary judgment, the Court views

"the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." *Griggs–Ryan v. Smith,* 904 F.2d 112, 115 (1st Cir.1990) (citations omitted). Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

*Euromotion, Inc. v. BMW of North America, Inc.,* 136 F.3d 866, 869 (1st Cir.1998).

## III. DISCUSSION

"ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 90, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). Section 514(a) of ERISA provides that "the provisions of [ERISA] shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title."[4] 29 U.S.C. § 1144(a). For purposes of section 514, "[t]he term 'State law' includes all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." 29 U.S.C. § 1144(c)(1). The purpose of section 514(a) is "to ensure uniformity in [employee benefit] plans by preventing states from imposing divergent obligations upon them." *Boston Children's Heart Foundation, Inc. v. Nadal–Ginard,* 73 F.3d 429, 439 (1st Cir.1996).

■■■■ "State laws that have merely a 'tenuous, remote, or peripheral connection with a covered benefit plan' may not be preempted

**4.** The parties do not dispute that the PFL policy was part of an employee benefit plan as described in section 514(a). *See* Plaintiffs' Memorandum at 1; Defendants' Motion for Summary Judgment at 4.

by ERISA." *Id.* (citation omitted). Normally, this is the case with regard to state laws of general applicability. *Id.* However, "[a] court cannot conclude that a state law is one of general applicability, and as such is not preempted by ERISA, based on the form or label of the law." *Id.* Rather, "[a]bsent precedent on a closely related problem, the inquiry into whether a state law 'relates to' an ERISA plan or is merely 'tenuous, remote, or peripheral' requires a court to look at the facts of [the] particular case." *Id.* at 439–40.

■ The Supreme Court has repeatedly noted the "expansive" nature of ERISA's preemption provision. *See California Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc.,* 519 U.S. 316, 117 S.Ct. 832, 136 L.Ed.2d 791, 799 (1997). However, in *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 115 S.Ct. 1671, 131 L.Ed.2d 695, 705 (1995), the Supreme Court acknowledged that "[i]f 'relate to' were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes, preemption would never run its course." A two-part inquiry assists in the application of section 514(a): "A law relate[s] to a covered employee benefit plan for the purposes of § 514(a) if it [1] has a connection with or [2] reference to such a plan." *Dillingham Constr.,* 136 L.Ed.2d at 799 (citations and internal quotation marks omitted).

Plaintiffs correctly point out that the Court of Appeals for the First Circuit has not directly addressed the specific issue presented by this action: whether ERISA preempts state law claims against an insurer, an insurance agency, and an insurance agent stemming from misrepresentations made by the insurance agent (acting on behalf of the insurer) prior to the establishment of the employee benefit plan in question. Defendants

encourage the Court to rely upon two First Circuit preemption cases for guidance in the instant case. In *Carlo v. Reed Rolled Thread Die Co.,* 49 F.3d 790, 794 (1st Cir. 1995), the Court of Appeals for the First Circuit, after acknowledging the "cogent arguments against [ERISA] preemption in misrepresentation claims," concluded that a state law claim of negligent misrepresentation *against an employer* was preempted because it related to an employee benefit plan. The plaintiffs in *Carlo* claimed that Mr. Carlo's employer had misrepresented the amount of benefits available under an early retirement option. *Id.* at 792. They further alleged that Mr. Carlo had elected to accept the early retirement offer based on his employer's misrepresentations. *Id.*

The court concluded that the state law claims were preempted "because they have a 'connection with or reference to' [the plan]." *Id.* at 794. In so finding, the court noted that if the plaintiffs were to ultimately prevail, "the damages would consist in part of the extra pension benefits which [the employer] allegedly promised [Mr. Carlo]. To compute these damages would require the court to refer to the [plan] as well as the misrepresentations allegedly made by [the employer]." *Id.* Therefore, "because the 'court's inquiry must be directed to the plan,' the Carlos' claims are preempted under the first test set forth in *Ingersoll–Rand.*"[5] *Id.* (quoting *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 140, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990)).

Further, the court found that "the Carlos' claims are inseparably connected to the [plan]." *Id.* at 795. In reaching this conclusion, the court reviewed its decision in *Vartanian v. Monsanto,* 14 F.3d 697, 700 (1st Cir.1994), a case in which the court found

---

**5.** The Court of Appeals for the First Circuit has interpreted *Ingersoll–Rand* as establishing two tests for determining whether a state law cause of action is preempted by ERISA. *See Carlo v. Reed Rolled Thread Die Co.,* 49 F.3d 790, 793 (1st Cir.1995); *Vartanian v. Monsanto Co.,* 14 F.3d 697, 700 (1st Cir.1994). According to the *Vartanian* court,

First, a law is expressly preempted by ERISA where a plaintiff, in order to prevail, must plead, and the court must find, that an ERISA

plan exists. [*Ingersoll–Rand Co.,* 498 U.S.] at 140, 111 S.Ct. at 483. The cause of action "relates to" an ERISA plan in this context because the court's inquiry must be directed to the plan. *Id.* Second, even where there is no express preemption, a cause of action is preempted if it conflicts directly with an ERISA cause of action. *Id.* at 142, 111 S.Ct. at 484.

*Vartanian,* 14 F.3d at 700.

ERISA preemption of claims based on allegations of misrepresentation *by an employer* regarding the possible availability of an enhanced early retirement package. The *Vartanian* court concluded that "the existence of the [plan] is inseparably connected to any determination of liability under state common law of misrepresentation. There is simply no cause of action if there is no plan." *Id.* Because "in order to prevail under a state common law claim for misrepresentation, Vartanian would undoubtably have to plead, and the Court would have to find, that the [plan] exists," the court held that "under the first test set forth in *Ingersoll–Rand, Co.*, Vartanian's claims 'relate to' an ERISA plan and are expressly preempted by ERISA." *Id.* The *Carlo* court similarly concluded that the Carlos' claims were "inseparably connect-

ed" to the plan. *Carlo*, 49 F.3d at 795. Defendants encourage the Court to follow the rationale of *Vartanian* and *Carlo* and find preemption in this case because Plaintiffs' state law claims require the Court to direct its inquiry to the plan.[6]

Plaintiffs argue that *Vartanian* and *Carlo* are not controlling in the instant action for two reasons. First, they involve claims against employers acting in their ERISA fiduciary capacities rather than insurance agents, insurance agencies, and insurers acting in efforts to market and sell insurance. Second, the alleged misrepresentations in *Vartanian* and *Carlo* transpired while the employee benefit plan was in operation. In the instant case, the alleged misrepresentations occurred *prior* to the existence and operation of the PFL policy under which

**6.** For further support, Defendants point to a recent Eleventh Circuit case with a closer factual scenario to that of the instant case. In *Hall v. Blue Cross/Blue Shield of Alabama*, 134 F.3d 1063, 1064 (11th Cir.1998), the Court of Appeals for the Eleventh Circuit addressed the question of whether ERISA preempts a state law fraudulent inducement claim *against an insurer* based upon alleged misrepresentations made *by the insurer's agents* in marketing the policy. The court concluded that the plaintiff's state law claim was preempted. *Id.* According to the court, "[b]ecause the terms of Blue Cross's ERISA-governed policy are critical to the resolution of Hall's fraudulent inducement claims, her cause of action is sufficiently related to an employee benefits plan to fall within ERISA's preemptive scope." *Id.* at 1065. The court further stated that "substantiating Hall's allegation that Blue Cross misrepresented the scope of its coverage for preexisting conditions ultimately requires a comparison between the agents' statements and the written policy. This necessary resort to the terms and provisions of Blue Cross's employee benefits plan plainly implicates ERISA." *Id.* at 1066.

Prior to its decision in *Hall*, the Court of Appeals for the Eleventh Circuit concluded in *Morstein v. Nat'l Ins. Services, Inc.*, 93 F.3d 715, 724 (11th Cir.1996), *cert. denied sub nom. Shaw Agency v. Morstein*, — U.S. —, 117 S.Ct. 769, 136 L.Ed.2d 715 (1997), that ERISA did not preempt a state law claim for fraudulent inducement against an independent insurance agent and insurance agency. The state law claim was based on allegations that the insurance agent fraudulently induced the plaintiff to change benefit plans by representing to her that the proposed policy would provide the same coverage for preexisting conditions as her current policy. *Id.*, 93 F.3d at 717. The court held that "when a state law claim brought against a non-ERISA

entity does not affect relations among principal ERISA entities as such, then it is not preempted by ERISA." *Id.*, 93 F.3d at 722. For the *Morstein* court, the analysis did not turn upon whether the state law claims would require the court to refer to the terms of the ERISA plan but, rather, *whether the action would affect relations among ERISA entities.* In finding preemption, the *Hall* court did not discuss the *Morstein* case.

In *Engelhardt v. Paul Revere Life Ins. Co.*, 139 F.3d 1346, 1353 (11th Cir.1998), the Eleventh Circuit returned to the inquiry it previously had adopted in *Morstein.* In holding that a state law claim for fraudulent inducement against an insurer was preempted, the court "conclude[d] that Engelhardt's fraud claim affects the ongoing ERISA relationship between Engelhardt and [the insurer]." *Id.* According to the court, "[the] suit 'affects the relations among the principal ERISA entities as such' and 'relates to' an ERISA plan for a number of reasons." *Id.* at 1352. Those reasons included the fact that the insurer had assumed its role as an ERISA entity and the ERISA plan had been established shortly before the insurer made the alleged misrepresentations. *Id.*

In light of *Engelhardt*, this Court believes that the rationale of *Hall* is not controlling in the Eleventh Circuit and declines to follow it in the instant case. The Court concludes that a multifactorial analysis such as that of the Eighth Circuit in *Wilson v. Zoellner*, 114 F.3d 713, 717 (8th Cir.1997), is more helpful in the context of this case, in which Plaintiffs state claims against the insurance agent, the insurance agency, and the insurer, none of whom was, at the time of the alleged misrepresentations nor at the time of the suit, an ERISA entity. Among other factors, the Eighth Circuit considers whether the state law claims will affect relations among the primary ERISA entities. *Id.* at 718.

Plaintiffs were later covered and at a time when neither PFL nor Plaintiffs were ERISA entities. Plaintiffs encourage the Court to employ a multi-factorial test in assessing whether Plaintiffs' claims are preempted.[7]

In *Wilson v. Zoellner*, 114 F.3d 713, 721 (8th Cir.1997), the Court of Appeals for the Eighth Circuit found that ERISA did not preempt a state law claim of negligent misrepresentation against an insurance agent. The plaintiff asserted that, in the process of marketing and selling an insurance policy to the plaintiff's employer, the insurance agent misrepresented the coverage of the policy. The record clearly indicated that, at the time of the alleged misrepresentations, the insurance agent was working as an agent for the insurer. *Id.* at 715. In considering the question of preemption, the court considered seven factors:

> [1] whether the state law negates an ERISA plan provision, [2] whether the state law affects relations between primary ERISA entities, [3] whether the state law impacts the structure of ERISA plans, [4] whether the state law impacts the administration of ERISA plans, [5] whether the state law has an economic impact on ERISA plans, [6] whether preemption of the state law is consistent with other ERISA provisions, and [7] whether the state law is an exercise of traditional state power.

*Id.* at 717. Based on an analysis of these factors, the court concluded that the plaintiff's state law misrepresentation claim "against an insurance agent for his negligent misrepresentation of the scope of coverage of an employee benefit plan does not have a

sufficient connection to the ERISA plan to require a finding of preemption." *Id.* at 720.

■ Application of the *Wilson* factors to the facts of the instant case indicates that preemption is not warranted. First, permitting this action to proceed will not negate any of the provisions in the PFL policy. Plaintiffs are not seeking benefits under the PFL policy, nor do they seek any recovery from the ERISA plan itself. Rather, their claims each arise from alleged misrepresentations occurring prior to the existence of the PFL policy. On these facts, Plaintiffs' claims will not negate any of the provisions of the PFL policy.

Second, Plaintiffs' state law claims will not affect relations among primary ERISA entities. The primary ERISA entities are the employer, the plan, the plan fiduciaries, and the beneficiaries of the plan. *Id.* at 718. There is no indication that Hebert's Auto Service or the plan itself will be affected by Plaintiffs' suit. Indeed, the PFL policy is no longer part of an employee benefit plan offered by Hebert's Auto Service, because its employees changed health insurers in 1997. In *Wilson*, the insurance agent argued that because the insurer, as his principal, would be ultimately liable for any damages levied against him, the claim against him would affect a fiduciary's relationship to a beneficiary and, therefore, should be preempted. *Id.* at 718. The court rejected this argument, stating "[i]f [the insurer] incurs any liability as a result of this suit, it will do so only as the employer of a tortfeasor, and not as a plan fiduciary." *Id.* Similarly, any liability on the part of PFL arises from the alleged misrepresentations of its agent prior to the establishment of the policy, during a period when PFL was not a plan fiduciary.[8] Plain-

---

7. Plaintiffs direct the Court's attention to Judge Bownes' concurrence in *Golas v. HomeView Inc.*, 106 F.3d 1 (1st Cir.1997). In *Golas*, the Court of Appeals for the First Circuit found it unnecessary to reach the issue of whether ERISA preempts a state law claim of misrepresentation against an insurance agent. *Id.* at 3. From the record before the court, it was unclear whether the insurance agent was acting independently or as an agent of either the insurer or the employer at the time of the alleged misrepresentations. *Id.* at 4 n. 5. In a concurring opinion, Judge Bownes found it necessary to reach the issue of preemption and concluded that ERISA did not preempt

the plaintiff's claims against the insurance agent, whom he characterized as independent. *Id.* at 9–10. In determining that ERISA does not preempt a state law misrepresentation claim against an independent insurance agent, Judge Bownes considered a series of eight factors to reach his conclusion. *Id.* at 10. However, the Court of Appeals for the First Circuit has not yet adopted such an approach to evaluating preemption questions.

8. In *Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1471–72 (4th Cir.1996), the Court of Appeals for the Fourth Circuit used similar reason-

tiffs do not seek to impose liability on PFL in its role as a plan fiduciary, a role which PFL no longer occupies with respect to the employees of Hebert's Auto Service.[9] Thus, the claims against Defendants do not affect relations among ERISA entities.

The third, fourth, and fifth factors do not favor preemption. Plaintiffs do not seek a recovery against the plan, and any recovery from PFL or the other defendants will not affect the structure of the plan. Likewise, there will be no impact on the administration of the plan either, as PFL no longer performs any fiduciary duties with respect to the plan.[10] There will be no direct economic effect on the plan, and the Court agrees with the *Wilson* court in its conclusion about the possible indirect impact of such a suit: "While the costs associated with marketing and selling ERISA plans could be influenced by allowing claims to proceed against insurance agents for negligent misrepresentation, we do not believe that this indirect economic

influence on an ERISA plan is a significant factor favoring preemption." *Id.* at 719.

In considering the consistency of preemption with other ERISA provisions, the Court does not see this factor as either favoring or disfavoring preemption. *See id.* The Court considers each of the state laws at issue in the instant case to be an exercise of traditional state power. "[T]ort law in general is traditionally an area of state regulation." *Golas v. HomeView Inc.*, 106 F.3d 1, 10 (1st Cir.1997) (Bownes, J., concurring). Plaintiffs' state law statutory claims for unfair and deceptive trade practices similarly fall within an area of traditional state control.

Based on the facts of the instant case and following the guidance of *Wilson*, the Court determines that ERISA does not preempt Plaintiffs' state law claims against Housel, UGA, UICI, and PFL. The alleged misrepresentations occurred prior to the time when the PFL policy took effect; indeed, neither Plaintiffs nor PFL were ERISA entities at that point.[11] The claims apparently do not

ing in its analysis of a state law malpractice claim against the defendants in their capacities as insurance professionals. In holding that the state law claim was not preempted, the court stated:

> [T]he state law malpractice claim does not affect relations among the principal ERISA entities .... Defendants' malpractice, if any, occurred before the faulty plan went into effect and before defendants began to act as Plan Administrator and Plan Supervisor. Accordingly, the claim is asserted by [the plaintiff], in its capacity as employer, against defendants in their capacities as insurance professionals, not in their capacities as ERISA fiduciaries. It is irrelevant that [the plaintiff] ultimately hired the defendants to serve as Plan Administrator and Plan Supervisor after they designed and sold the plan to [the plaintiff]. The malpractice claim would still exist if [the plaintiff] had hired someone other than the defendants to serve as Plan Administrator and Plan Supervisor.

9. The Court acknowledges that the particular facts of this case, in which PFL no longer occupies a fiduciary role with respect to the ERISA plan, are unusual. The Court limits its analysis to the facts of this case and offers no opinion as to the outcome of an analysis of the *Wilson* factors with respect to a case in which the insurer is still an ERISA entity at the time of the suit.

10. Plaintiffs specifically argue that "[b]ecause they do not seek plan benefits but rather compensatory and punitive damages, the Stetsons' claims will cause the plan no economic harm

.... Moreover, a one time recovery of damages by the Stetsons from PFL will not affect PFL's administration of the plan since it is no longer a fiduciary of the plan." Plaintiffs' Memorandum at 17. Defendants do not argue or provide any indication that Plaintiffs' claims could impact the plan in either an administrative or economic sense but, rather, argue that Plaintiffs' claims will require reference to the plan's provisions for the determination of both liability and damages. Further, the parties' statements of fact offer no indication that this suit implicates the ERISA plan in any way.

11. Other courts have noted the significance of the timing of the conduct giving rise to the state law claims at issue. *See, e.g., Bast v. Prudential Ins. Co.*, 150 F.3d 1003, 1008 (9th Cir.1998) ("The [plaintiffs'] claims against Prudential arise out of Prudential's actions as the benefit plan administrator, not as an insurance company or insurance provider. '[T]he key issue is whether the parties' relationships are ERISA-governed relationships.' ") (citations omitted). The Court of Appeals for the First Circuit made a similar distinction in *Boston Children's Heart Foundation, Inc. v. Nadal–Ginard*, 73 F.3d 429, 440 (1st Cir.1996), in which the court held that a claim for breach of fiduciary duty against a corporate officer for failure to disclose that the proposed ERISA plan was favorable to him was not preempted by ERISA. In so finding, the court noted that the defendant's "misconduct preceded the formal adoption of the plan. The legal determination that [the defendant's] conduct constitutes a fiduciary breach does not require the

impact upon the PFL policy at all; indeed, the employees of Hebert's Auto Service are no longer insured by PFL.[12] No provisions of the plan are in dispute, and although resolution of Plaintiffs' claims may require reference to the terms of the PFL policy, the claims do not impact upon the administration or interpretation of the policy as an element of any existing ERISA plan, nor the relationship among any ERISA entities, as PFL is no longer an ERISA fiduciary with respect to Plaintiffs. Therefore, the Court concludes that Plaintiffs' state law claims against Defendants do not have a connection with or a reference to an ERISA plan which warrants preemption.

The Court has carefully studied both of the cited First Circuit cases and numerous others on, and close to, the issue presented in the instant case. It concludes that the potential need to make the suggested comparisons and to indulge in consideration of the contents of the PFL policy in the respects alluded to in Defendants' argument in order to determine the liability and damages exposure on claims arising under state law against Defendants (who were not, at the time of the alleged misconduct or when this suit was instituted, ERISA entities), where liability is predicated upon events preceding in time the existence of the PFL policy as part of the ERISA plan, and where imposition of liability will have no impact upon the ERISA plan or its administration, does not make the claims sufficiently "related to" the ERISA plan to generate preemption. In such a case and in such circumstances, none of the underlying purposes of ERISA preemption is served by application of the doctrine.

"The 'ultimate touchstone' in deciding whether ERISA preempts a state law is the Congressional purpose in enacting ERISA." *In Home Health, Inc. v. Prudential Ins. Co. of America,* 101 F.3d 600, 606 (8th Cir.1996)

(quoting *Fort Halifax Packing Co., Inc. v. Coyne,* 482 U.S. 1, 8, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987)). The purpose of ERISA is:

> to protect interstate commerce and the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts.

29 U.S.C. § 1001(b). Thus, if the congressional intent spurring the enactment of ERISA was to provide protection for the interests of participants and beneficiaries of employee benefit plans, it is difficult to view such a purpose as being fostered or furthered by preemption of state law claims by participants or beneficiaries targeting misconduct by an insurer and its agents that occurred prior to the establishment of the employee benefit plan, when the action has no demonstrable effect on the administration, structure, or fiscal well-being of the plan. The Court, therefore, concludes that no congressional purpose is served by preemption of Plaintiffs' claims.

### IV. CONCLUSION

Accordingly, it is **ORDERED** that Defendants' Motion for Summary Judgment be, and it is hereby, **DENIED**. It is further **ORDERED** that this matter be, and it is hereby, **REMANDED** to the Maine Superior Court for resolution of the state law claims originally filed in that court.

---

resolution of any dispute about the interpretation or administration of the plan." *Id.* at 440. *See also Engelhardt,* 139 F.3d at 1352–53 (noting that the insurer had assumed its ERISA fiduciary role and the plan had been established prior to the alleged misrepresentations); *Coyne,* 98 F.3d at 1471 (noting the defendants' alleged misconduct occurred before they began to act in their capacities as ERISA fiduciaries).

12. In fact, the employees of Hebert's Auto Services were not covered by the PFL policy at any time during the pendency of this action. The employees changed health insurers in the summer of 1997, and this suit was not filed until November 1997. *See* Notice of Removal (Docket No. 1) ¶ 1.