D.A.B. et al., Appellants,

v.

David R. BROWN, Caremark, Inc.,
Genentech, Inc., Respondents.

No. C2–97–817.

Court of Appeals of Minnesota.

Nov. 4, 1997.

Richard M. Ihrig, Michael D.L. Olafson, Steven M. Pincus, Lindquist & Vennum, P.L.L.P., Minneapolis, for appellants.

Kay Nord Hunt, Phillip A. Cole, Mary I. King, Lommen, Nelson, Cole & Stageberg, P.A., Minneapolis, for respondent David R. Brown.

John W. Lundquist, Thompson, Lundquist & Sicoli, Ltd., Minneapolis, and Howard M. Pearl, Catherine W. Joyce, Winston & Strawn, Chicago, IL, for respondent Caremark, Inc.

Jeffrey J. Keyes, Jay W. Schlosser, Briggs & Morgan, P.A., Minneapolis, and Charles B. Sklarsky, Robert R. Stauffer, Jenner & Block, Chicago, IL, for respondent Genentech, Inc.

Considered and decided by SHORT, P.J., and CRIPPEN and WILLIS, JJ.

## OPINION

SHORT, Judge.

This case arises out of a physician's prescription for Protropin, a synthetic growth hormone drug. A putative class of patients and their parents sued the physician, drug manufacturer, and drug distributor for breach of fiduciary duty, conspiracy to breach that duty, common law fraud, negligent misrepresentation, and violation of the Minnesota Prevention of Consumer Fraud Act, Minn.Stat. §§ 325F.68–.70 (1996). On appeal from a dismissal with prejudice, the putative class argues: (1) physicians should be subject to the law of fiduciaries, and (2) their complaint alleges sufficient injury to support a statutory fraud claim.

## FACTS

Protropin is a drug used in the treatment of growth hormone inadequacy in children. Typically, a doctor prescribes Protropin for a child from childhood through the teenage years. The child self-administers the drug at home, several times a week. Depending on the dosage, Protropin treatment can cost between $20,000 and $30,000 per year.

Genentech, Inc. (manufacturer), developed and manufactured Protropin. In 1985, the Food and Drug Administration approved the drug and permitted the manufacturer seven years of market exclusivity. Caremark, Inc. (distributor), served as the exclusive, non-hospital based pharmacy distributor of Protropin in the United States. From February of 1986 until September of 1994, Dr. David R. Brown (doctor), a Minneapolis physician specializing in pediatric endocrinology, prescribed Protropin to more than 200 patients.

On August 4, 1994, the government indicted the doctor, distributor, and others on multiple counts of mail fraud, wire fraud, money laundering, and violation of the Medicaid/Medicare Anti–Kickback statute, 42 U.S.C. § 1320a–7b(b) (1996). On June 15, 1995, the distributor pleaded guilty to one count of mail fraud and agreed to pay several million dollars in fees, penalties, and restitution. As part of that plea agreement, the distributor stipulated that it made payments to the doctor to induce him to refer patients for Protropin-related services and supplies. A federal jury then convicted the doctor of two counts of violating the federal statute, but the trial court granted a new trial because the doctor was denied his Sixth Amendment right to trial by an impartial jury. *See generally United States v. Brown,* 913 F.Supp. 1324, 1333 (D.Minn.1996), *aff'd,* 108 F.3d 863 (8th Cir.1997).

On July 8, 1996, six patients and their parents filed suit against the doctor, distributor, and manufacturer for failing to disclose the kickback scheme. Five of the six pa-

tients had terminated treatment with the doctor by May of 1994. On a defense motion, the trial court dismissed the lawsuit with prejudice for failure to state a claim pursuant to Minn. R. Civ. P. 9.02 and 12.02(e). The putative class appeals dismissal of the claims alleging breach of a fiduciary duty, conspiracy to breach that duty, and violation of the state fraud statute. The doctor, distributor, and manufacturer seek review of the trial court's determination that, due to fraudulent concealment, the two-year statute of limitations commenced on August 4, 1994.

### ISSUES

I. Does the complaint set forth a legally sufficient claim for breach of fiduciary duty and conspiracy to breach that duty?

II. Does the complaint set forth a legally sufficient claim under the Consumer Fraud Act?

III. Do the patients' parents have standing to sue the doctor, distributor, or manufacturer?

### ANALYSIS

In reviewing a dismissal for failure to state a claim upon which relief can be granted, the only question before us is whether the complaint sets forth a legally sufficient claim for which relief can be granted. *Elzie v. Commissioner of Pub. Safety*, 298 N.W.2d 29, 32 (Minn.1980); *Davis v. State Dep't of Corrections*, 500 N.W.2d 134, 135 (Minn.App.1993), *review denied* (Minn. July 15, 1993). We consider as true the factual allegations made in the complaint, and address solely their legal sufficiency. *See* Minn. R. Civ. P. 12.03 (providing for motion for judgment on pleadings).

### I.

 A physician is prohibited by Minn. Stat. § 147.091, subd.1 (p)(1) (1996), from receiving compensation for the referral of patients or the prescription of drugs. That statute protects consumers from economic arrangements in the medical arena that would increase the cost of health care, restrict access to goods and services, or other-wise harm consumer interests. The statute does not provide a private remedy. *See* Minn. R. 5620.0100 (1995) (outlining purpose of statute). Rather, a violation of the statute subjects the physician to disciplinary action by the Board of Medical Examiners. Minn. Stat. § 147.091, subd. 1 (1996). In addition, a physician who knowingly accepts remuneration in return for referrals involving Medicare or Medicaid patients is guilty of a felony under the federal anti-kickback statute, 42 U.S.C. § 1320a–7b(b) (1996).

 Apart from these administrative remedies and criminal sanctions, a patient may sue a physician for failure to disclose material facts relating to treatment if the lack of disclosure prevents a patient from making an informed decision about treatment. *Cornfeldt v. Tongen*, 295 N.W.2d 638, 640 (Minn.1980) (*Cornfeldt II*); *Cornfeldt v. Tongen*, 262 N.W.2d 684, 699 (Minn.1977) (*Cornfeldt I*). It is well accepted that patients deserve medical opinions about treatment plans and referrals unsullied by conflicting motives. *See* Council on Ethical and Judicial Affairs, Am. Med. Ass'n, *Current Opinions of the Council on Ethical and Judicial Affairs of the American Medical Association—1986*, § 8.06, at 31 (1986) (mandating referrals be made in best interests of patient); *see also* David Burda, *AMA Toughens Guidelines on Physician Self–Referrals*, 21 Mod. Healthcare 4, 4 (1991). The putative class suggests we put "teeth" into that duty by applying traditional fiduciary concepts. *See generally* Marc A. Rodwin, *Medicine, Money, and Morals: Physicians' Conflicts of Interest*, 234–36 (1993) (suggesting application of traditional fiduciary law to doctors engaged in kickback schemes); *see, e.g., Brandt v. Medical Defense Assocs.*, 856 S.W.2d 667, 670 (Mo.1993) (holding physician has fiduciary duty of confidentiality, based on Hippocratic Oath, not to disclose any medical information received in connection with patient's treatment). However, in reviewing a case dismissed for failure to state a claim, we look at the essence of the allegations contained in the complaint, and not at the legal concepts advocated by counsel. *See Kaiser v. Memorial Blood Ctr.*, 486 N.W.2d 762, 767 (Minn.1992) (concluding applicable statute of

limitations hinged on whether complained of action was taken pursuant to professional licensure or based on conduct for which licensure not required).

■ Although the putative class attempts to frame the issue before us as one involving a breach of fiduciary duty, the gravamen of the complaint sounds in medical malpractice. The distributor stipulated in federal court that it made payments to the doctor to induce him to refer patients for Protropin-related services and supplies. Therefore, the kickback scheme involving the doctor, drug manufacturer, and drug distributor was dependent on the medical diagnosis, treatment, and care of the patients. *Cf. Stackhouse v. Emerson,* 611 So.2d 1365, 1366 (Fla.Dist.Ct. App.1993) (reversing Rule 12 dismissal because facts in complaint alleged intentional torts independent of medical diagnosis, treatment, or care); *Tighe v. Ginsberg,* 146 A.D.2d 268, 540 N.Y.S.2d 99, 100 (N.Y.App. Div.1989) (holding unauthorized disclosure of medical records sounded in negligence, not malpractice, because breach arose independent of examination and care). The complained-of kickback scheme relates directly to the putative class's Protropin treatment.

Thus, despite counsel's creative characterizations and foreign support, this case is a malpractice action. The doctor's duty to disclose the kickback scheme presents a classic informed consent issue. *See Cornfeldt I,* 262 N.W.2d at 699 (recognizing physician's duty to inform patients of treatment risks); *see also* Carol Michna, *The Patient Has Not Been Informed: A Proposal For A Physician Conflict of Interest Disclosure Law,* 27 Val. U.L.Rev. 495, 528 (1993) (suggesting adoption of Model Physician Conflict of Interest Disclosure Law will add force to AMA's guidelines and fully apprise patient of financial incentives that may affect physician decision). To hold otherwise would permit avoidance of every statute defining the physician/patient relationship. Indeed, it is difficult to imagine any medical malpractice claim that would not be pleaded as a breach of fiduciary duty claim in order to bypass legislative procedures aimed at implementing common law. *See, e.g.,* Minn.Stat. § 144.651 (1996) (providing "patients' bill of rights").

We decline to create a new cause of action simply to permit the putative class to avoid showing injury or to circumvent the legislatively mandated statute of limitations. *See Femrite v. Abbott Northwestern Hosp.,* 568 N.W.2d 535, 545 (Minn.App.1997) (Randall, J., concurring specially) (observing malpractice case against hospital was unsuccessful effort to circumvent two-year statutory period by splitting cause of action and calling claim "administrative negligence").

Therefore, as a medical malpractice claim, the complaint must have been filed within the two-year statute of limitations and have alleged actual harm. *See* Minn.Stat. § 541.07(1) (providing for a two-year statute of limitations for medical malpractice claims); *Fabio v. Bellomo,* 504 N.W.2d 758, 762 (Minn.1993) (outlining prima facie case for medical malpractice cause of action and discussing two-year statute of limitations). Significantly, the putative class's complaint details events occurring outside of the two-year statute of limitations period and does not allege the Protropin treatment was improper or that the treatment resulted in harm.

The putative class urges this court to ignore the requirements of medical malpractice law and recognize a new tort based on breach of fiduciary duty to cover the wrong perpetrated by a physician who receives kickbacks for prescribing a manufacturer's and distributor's products. *See Moore v. Regents of Univ. of Calif.,* 51 Cal.3d 120, 271 Cal.Rptr. 146, 150, 793 P.2d 479, 483 (1990) (holding patient, whose treating physician utilized patient's cells in research and development of new cell line without disclosure, was entitled to bring action for improper performance of medical procedures either without informed consent or in breach of fiduciary duty). *But see Zagaros v. Erickson,* 558 N.W.2d 516, 522 n. 1 (Minn.App. 1997) (noting Minnesota has declined to recognize cause of action for tortious breach of physician-patient relationship), *review denied* (Minn. Apr. 17, 1997); *Stubbs v. North Mem'l Med. Ctr.,* 448 N.W.2d 78, 83 (Minn. App.1989) (declining, as error-correcting court, to recognize cause of action that has not been recognized previously by courts or created by legislative action), *review denied*

(Minn. Jan. 12, 1990). Under this proposed new cause of action, a six-year statute of limitations, not the two-year medical malpractice statute, would govern. In addition, "injury" would be presumed, due to the nature of the fiduciary relationship, and a fiduciary could be required to disgorge itself of all profits gained as a result of the breach. *See, e.g., Rice v. Perl,* 320 N.W.2d 407, 411 (Minn.1982).

■ Fiduciary duty is the highest standard of duty implied by law. Henry Campbell Black, et al., *Black's Law Dictionary* 625 (6th ed.1990); *see generally* Ernest Weinrib, *The Fiduciary Obligation,* 25 U. Toronto L.J. 1, 5–6 (1975) (discussing judicial determination of fiduciary relationship). In some instances, professional liability attaches when the fiduciary does not disclose all material facts that affect the clients' interests. *See, e.g., Shea v. Esensten,* 107 F.3d 625, 629 (8th Cir.1997) (holding HMO had fiduciary duty under ERISA to disclose its incentive structure to plan participant), *cert. denied,* —— U.S. ——, 118 S.Ct. 297, —— L.Ed.2d —— (1997); *Perl,* 320 N.W.2d at 411 (holding attorney breached fiduciary duty to client where attorney failed to disclose business relationship with claims adjuster). The putative class argues physicians should be held to the same high standards of conduct as lawyers. *See, e.g.,* Ronald E. Mallen & Victor B. Levit, *Legal Malpractice* § 121, at 208 (2d ed.1981) (noting attorney under duty to represent client with undivided loyalty, to preserve client's confidences, and to disclose material matters bearing upon representation of client); *see also Estate of Re v. Kornstein Veisz & Wexler,* 958 F.Supp. 907, 924–28 (S.D.N.Y.1997) (holding client can maintain breach of fiduciary duty action against attorneys despite dismissal of malpractice and contract claims); *Perl,* 320 N.W.2d at 411 (holding attorney breached fiduciary duty when client placed in position that might taint settlement transaction).

While we agree that a physician's advice about treatment options should be free from self-serving financial considerations, any cause of action based on that conduct necessarily flows from the therapeutic relationship. Any breach of fiduciary duty that may have occurred during the doctor's prescription of medication to his patients arose while the doctor was examining, diagnosing, treating, or caring for his patients. Thus, the complained-of acts constitute an integral part of the process of rendering medical treatment.

■ Because the complaint contains no allegation of injury and alleges conduct outside the two-year statute of limitations, it is legally insufficient. In addition, the conspiracy count fails because it is not supported by an underlying tort. *See Harding v. Ohio Cas. Ins. Co.,* 230 Minn. 327, 337, 41 N.W.2d 818, 824 (1950) (concluding liability for conspiracy was of necessity predicated upon underlying civil wrong). Under these circumstances, the trial court properly dismissed Claims I and II for failure to state a claim.

### II.

■ The Consumer Fraud Act provides:

> [t]he act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is enjoinable as provided herein.

Minn.Stat. § 325F.69, subd. 1 (1996). The sale of merchandise includes the sale of services, and a private citizen is entitled to bring a civil action for injuries caused by violation of the statute. Minn.Stat. § 325F.68, subd. 2 (1996); Minn.Stat. § 8.31, subd. 3a (1996). The statute broadens the common law to counteract the seller's disproportionate marketing power present in consumer transactions. *State by Humphrey v. Alpine Air Prods., Inc.,* 500 N.W.2d 788, 790 (Minn. 1993). But, plaintiffs must prove the existence of an injury to sustain a cause of action under the statute. *See K.A.C. v. Benson,* 527 N.W.2d 553, 562 (Minn.1995) (holding no basis for recovery under statute where "undisclosed, miniscule 'risk' of HIV exposure did not materialize in harm to plaintiff because T.M.W. tested negative for the HIV anti-

body"); *see also Steele v. Hospital Corp. of Am.*, 36 F.3d 69, 70–71 (9th Cir.1994) (holding patients and parents suffered no pecuniary loss because allegedly excessive charges were covered by insurance).

A careful reading of the complaint reveals only a general allegation that the patients and their parents "have been harmed" by the kickback scheme. Significantly, there are no allegations that premiums or co-payments increased solely due to their purchase of Protropin. In addition, the complaint does not seek damages for a price differential between Protropin and another drug, or allege the patients and their parents would have stopped Protropin treatment or purchased another drug if the doctor had disclosed the kickback scheme. Because the complaint fails to allege injury, which is an essential element of a cause of action under the Consumer Fraud Act, the trial court properly dismissed Claims III and VI.

We need not reach the parties' standing or tolling arguments because the putative class failed to allege injury to support any of its claims.

## DECISION

The complaint fails to set forth a legally sufficient claim for relief. Under these circumstances, the trial court properly dismissed the complaint with prejudice.

**Affirmed.**