# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 99-1388

_____

Dianne L. Shea,

    Appellant,

v.

Sidney Esensten; Jeffrey A. Arenson; Family Medical Clinic, P.A., a Minnesota Non-Profit Corp., Family Medical Clinic; Fairview, A Minnesota Non-Profit Corp.; Medica, a Minnesota Non-Profit Corp.; United Healthcare, United Healthcare Corp., a Minnesota Non-Profit Corp.; Secretary of Labor; Allina Health System Corp.,

    Appellees.

-----------------------------------------

Secretary of Labor,

    Amicus on Behalf of Appellant.

Appeal from the United States District Court for the District of Minnesota.

_____

Submitted: November 18, 1999
Filed: March 31, 2000

_____

Before BOWMAN, LAY, and HANSEN, Circuit Judges.
_____

HANSEN, Circuit Judge.

Dianne L. Shea brought this wrongful death suit in state court after her husband's death due to heart failure, and the case now has been twice removed to federal court. In this latest removal proceeding, the district court dismissed the tort claim of count III (alleging negligent misrepresentation for the failure of Mr. Shea's physicians to disclose a conflict of interest) as preempted by ERISA.[1] The district court also dismissed a corporate party (Fairview) on statute of limitations grounds. Mrs. Shea appeals the preemption issue, joined by the Secretary of Labor as amicus curiae,[2] and the defendants move to dismiss the appeal as moot. We affirm in part, reverse in part, and deny the motion to dismiss the appeal.

I.

Patrick Shea died of a heart attack at the age of 40 after being assured by his family doctors that a referral to a cardiologist was unnecessary given his age and symptoms. Although Mr. Shea offered to pay for the referral himself when his symptoms did not seem to be improving, his physicians persuaded him to trust their judgment that neither his age nor his symptoms justified a visit to a cardiologist. Following her husband's death due to heart failure, Mrs. Shea initially brought a wrongful death action in state court against two physicians (Sidney Esensten and Jeffrey Arenson); the Family Medical Clinic, now known as Fairview Clinics (the

---

[1]The Employee Retirement Income Security Act of 1974 (codified as amended at 29 U.S.C. §§ 1001-1461 (1994 & Supp. III 1997) and in scattered sections of Title 26 U.S.C.).

[2]The Secretary of Labor is charged with interpreting and enforcing all provisions of Title I of ERISA. See 29 U.S.C. §§ 1132(a)(2), (5), and 1135.

Clinic); and Medica (her husband's health maintenance organization (HMO), with whom his employer contracted to provide employee health care). Dianne Shea alleged in her suit that certain financial incentives built into Medica's contract with Mr. Shea's physicians were designed to minimize referrals to specialists. She further alleged that if her husband had known of these incentives, he would not have trusted his physicians' medical advice so completely but would have sought out the life-saving opinion of a specialist at his own expense.

Medica initially removed the case to federal court, contending that Mrs. Shea's tort claims were preempted by ERISA, 29 U.S.C. § 1144. Mrs. Shea then amended her claim to state that Medica breached its fiduciary duties under ERISA by not disclosing to plan participants the financial incentives designed to reduce referrals that it included in its physician contracts. The district court dismissed Medica, concluding that Mrs. Shea's state tort claims against Medica as the plan administrator were preempted by ERISA and that the amended complaint asserting a breach of fiduciary duty failed to state a claim, see Fed. R. Civ. P. 12(b)(6). The district court remanded to state court the remaining state law claims.

Mrs. Shea appealed to this court. We reversed the district court's Rule 12(b)(6) dismissal of Medica, concluding that Mrs. Shea's amended complaint adequately stated a claim of breach of fiduciary duty against Medica. See Shea v. Esensten, 107 F.3d 625 (8th Cir.) (Shea I), cert. denied, 522 U.S. 914 (1997). Specifically, we held that a plan administrator has a fiduciary duty to disclose all material facts affecting a plan participant's health care interests, including financial incentives that might discourage a treating physician from providing essential referrals for covered conditions. See id. at 629. Medica ultimately settled the claim against it.

Meanwhile, the remanded state tort action proceeded against the doctors and the Clinic in state court. Mrs. Shea moved to amend her complaint to add as a defendant Fairview, a Minnesota non-profit corporation that owns and operates the Clinic. The

3

second amended complaint included count I, alleging medical negligence; count II, alleging breach of contract; count III, alleging fraud and negligent misrepresentation based on the doctors' failure to disclose the conflict of interest created by their contractual incentives; count IV, alleging the joint and several liability of Fairview for damages awarded in counts I through III; and count V, seeking punitive damages against all defendants.

Before the state court ruled on the motion to amend, Fairview removed the second amended complaint to federal court. The doctors and the Clinic then moved the federal district court for a partial dismissal. The district court dismissed count II, the breach of contract claim, without resistance by Mrs. Shea, and it is not at issue in this appeal. The district court dismissed count III, the fraud and negligent misrepresentation claim, as preempted by ERISA after concluding that the claim relates to the ERISA plan because it involves an administrative denial of benefits, not a medical decision. Fairview moved for and received a complete dismissal on statute of limitations grounds. The district court then remanded to state court the remaining negligence claim against the doctors and the Clinic as stated in count I. A state court jury ruled in favor of the doctors and the Clinic on that medical negligence claim.

Mrs. Shea now appeals the district court's conclusions on ERISA preemption and the statute of limitations. The defendants move to dismiss the appeal as moot.

## II.
## A. Motion to Dismiss

We begin by addressing the pending motion to dismiss. After this appeal was filed, Mrs. Shea's medical negligence claim of count I was brought to trial in state court where a jury resolved the claim in favor of the defendants, specifically finding that the doctors did not provide Mr. Shea with negligent care or treatment. The doctors and the Clinic then moved to dismiss the present appeal as moot, asserting that after the jury

4

verdict, Mrs. Shea would not be able to prove that her husband was denied appropriate care, which they assert is an essential element of Mrs. Shea's remaining claim of fraud and negligent misrepresentation. Mrs. Shea resists the motion, asserting the appeal is not moot because the state jury verdict has yet to be tested by post trial motions and state appellate procedures. She further contends that even if the jury verdict withstands post trial and appellate scrutiny, her negligent misrepresentation claim does not automatically fail in light of the jury's determination that the physicians provided adequate care because the negligent misrepresentation claim carries its own, independent injury.

"Under Article III of the Constitution, federal courts may adjudicate only actual, ongoing cases or controversies. It is of no consequence that the controversy was live at earlier stages in this case; it must be live when we decide the issues." Doe v. Lafleur, 179 F.3d 613, 615 (8th Cir. 1999) (internal quotations omitted). If this case is indeed moot, we must dismiss the appeal to avoid rendering a merely advisory opinion. See id. However, we agree with Mrs. Shea's assertion that the appeal is not moot. The state court judgment is not yet final. Also, in spite of the jury's conclusion in favor of the doctors on the negligent treatment claim, we believe that a jury could nevertheless consistently conclude that the defendants are liable on the independent negligent misrepresentation claim of count III.

Count III asserts a claim of negligent misrepresentation based on the physicians' failure to disclose a financial incentive to minimize referrals to specialists, which she asserts amounts to a conflict of interest. In Minnesota, the tort of negligent misrepresentation occurs when a person making a representation "ha[s] not discovered or communicated certain information that the ordinary person in his or her position would have discovered or communicated." Safeco Inc. Co. of Am. v. Dain Bosworth Inc., 531 N.W.2d 867, 870 (Minn. Ct. App. 1995). State professional ethics standards for physicians mandate disclosure of conflicts of interest, and the Minnesota courts have noted that "a physician's advice about treatment options should be free from

5

self-serving financial considerations." <u>D.A.B. v. Brown</u>, 570 N.W.2d 168, 172 (Minn. Ct. App. 1997). "It is well accepted that patients deserve medical opinions about treatment plans and referrals unsullied by conflicting motives." <u>Id.</u> at 170. Minnesota law indicates that the breach of a doctor's state-imposed ethical duty to disclose financial incentives is a medical malpractice claim, requiring a showing of actual harm to state a cause of action. <u>See</u> <u>id.</u> at 171.

In count III, Mrs. Shea asserts that Mr. Shea's physicians negligently or fraudulently failed to disclose a financial conflict of interest in violation of state professional ethics and that this failure to disclose adversely influenced his decision to seek the advice of a specialist. She asserts that regardless of the quality of the actual treatment rendered by Mr. Shea's physicians (already adjudicated in state court to have been adequate), their failure to disclose a financial incentive caused Mr. Shea the independent injury of having been prevented from making an informed choice of whether to seek what might have been a life-saving referral at his own expense. Because Mrs. Shea's negligent misrepresentation claim of count III asserts a distinct and independent injury from the negligent treatment claim asserted and adjudicated in count I, the state jury verdict in favor of the physicians on count I does not necessarily preclude a finding in favor of Mrs. Shea on count III. Therefore, we deny the defendants' motion to dismiss this appeal as moot.

## B. ERISA Preemption

Moving to the merits of the appeal, we first consider whether the district court correctly concluded that Mrs. Shea's claim in count III is preempted by ERISA. Because the issue of ERISA preemption is a question of law involving statutory interpretation, we review de novo the district court's decision to dismiss a claim on grounds of preemption. <u>See</u> <u>Prudential Ins. Co. of Am. v. National Park Med. Ctr., Inc.</u>, 154 F.3d 812, 818 (8th Cir. 1998).

6

Congress included an express preemption clause in ERISA, which provides that ERISA supersedes all state laws insofar as they "relate to" an employee benefit plan under ERISA. 29 U.S.C. § 1144(a); see Wilson v. Zoellner, 114 F.3d 713, 716 (8th Cir. 1997). The Supreme Court has constructed a two-part inquiry for determining whether a state law is preempted under this "relates to" provision. Under this analysis, a state law "relates to" an ERISA plan within the meaning of § 1144(a) if it (1) expressly refers to an ERISA plan, or (2) has a connection with such a plan. See California Div. of Labor Standards Enforcement v. Dillingham Constr., N. A., Inc., 519 U.S. 316, 324 (1997); Wilson, 114 F.3d at 716.

We first conclude that there is no express reference to an ERISA plan here. Minnesota's law of negligent misrepresentation is a tort law of general application. "[I]t makes no reference to and functions irrespective of the existence of an ERISA plan." Wilson, 114 F.3d at 717 (discussing Missouri's state law of negligent misrepresentation). The defendants assert that an express reference to an ERISA plan is at issue here because Mrs. Shea's claim would not exist absent an express reference to the incentives created by the ERISA plan's contract with Mr. Shea's physicians. We believe, however, that the defendants place too much emphasis on this reference to the plan in the lawsuit. It is true that to prove her claim, Mrs. Shea must demonstrate that the physicians' contract, which happens to be an ERISA plan in this case, created certain financial incentives for Mr. Shea's physicians. This is the evidentiary foundation for demonstrating a conflict of interest that the physicians may have been required to disclose under state law. This reference to the ERISA contract terms is not an express state law reference that "relates to" an ERISA plan within the meaning of the preemption clause, because the contract creating the financial incentive must be referenced regardless of whether or not that contract stems from an ERISA plan. The express reference to the ERISA plan that will arise in this tort suit is necessary to demonstrate the origin of the physician's potential conflict of interest under state law, but the plan itself is peripheral to the ultimate issue of whether the physicians violated the state ethical duty to disclose a financial conflict of interest. See New York State

7

Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 661 (1995) (noting that there is no preemption "if the state law has only a tenuous, remote, or peripheral connection with covered plans, as is the case with many laws of general applicability") (internal quotations omitted).  Accordingly, we conclude that the state law negligent misrepresentation claim of count III is not subject to ERISA preemption on the basis of an express reference to ERISA.

"A law that does not refer to ERISA plans may yet be pre-empted if it has a 'connection with' ERISA plans." California Div. of Labor Standards Enforcement, 519 U.S. at 325.  To determine the existence of this forbidden connection, the Supreme Court directs us to "look both to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive as well as to the nature of the effect of the state law on ERISA plans."  Id. (internal quotations and citation omitted).  In addressing the effect of the state law on an ERISA plan, we consider a variety of factors, including:

> [1] whether the state law negates an ERISA plan provision, [2] whether the state law affects relations between primary ERISA entities, [3] whether the state law impacts the structure of ERISA plans, [4] whether the state law impacts the administration of ERISA plans, [5] whether the state law has an economic impact on ERISA plans, [6] whether preemption of the state law is consistent with other ERISA provisions, and [7] whether the state law is an exercise of traditional state power.

Wilson, 114 F.3d at 717 (quoting Arkansas Blue Cross & Blue Shield v. St. Mary's Hosp., Inc., 947 F.2d 1341, 1344-45 (8th Cir. 1991)).

Considering the Arkansas Blue Cross & Blue Shield factors, we first note that allowing this state tort suit to proceed would not negate any ERISA plan provision and would not affect the relations between primary ERISA entities.  Physicians are responsible to follow their state law ethical rules regardless of any contractual relation

8

with or obligation to an ERISA entity. Merely requiring physicians to disclose financial conflicts of interest that might affect a patient's treatment options does not alter or affect any plan provision, it simply discloses its existence. Additionally, nothing new will be required of an ERISA entity by allowing this tort suit against physicians for their violation of ethical duties imposed by state law. (The ERISA fiduciary is already obligated to make this type of disclosure according to Shea I.)

Similarly, allowing a state tort claim to proceed against a physician for failure to disclose a conflict of interest would not impact the structure, administration, or economics of any ERISA plan. Mrs. Shea's claim does not attack the validity of a term of the ERISA plan nor is she making a claim for benefits under the plan. Contrary to the defendants' assertions, she does not assert in count III that her husband was denied a referral or "benefit" to which he was entitled under the plan. Mr. Shea made no request for a referral of the plan administrator. Furthermore, his physicians were not plan administrators, and their medical advice cannot be classified as an administrative denial of plan benefits. Mr. Shea relied on his physicians' advice that a referral to a specialist was not medically necessary given his symptoms. Count III asserts that he would not have relied so completely on their medical advice had he known of their financial conflict of interest. The Minnesota courts have held that "a physician's advice about treatment options should be free from self-serving financial considerations, [and] any cause of action based on that conduct necessarily flows from the therapeutic relationship" or "the process of rendering medical treatment." D.A.B., 570 N.W.2d at 172. Mrs. Shea's claim stems from "the process of rendering medical treatment," id., and therefore, it would not affect the structure, administration or economics of the ERISA plan.

The district court concluded that the negligent misrepresentation claim of count III was preempted for the same reason that Mrs. Shea's claim against Medica, a plan fiduciary, was preempted in Shea I. We respectfully disagree with this analysis. Our opinion in Shea I mandates that ERISA fiduciaries must disclose financial incentives

9

that discourage a treating physician from providing referrals. 107 F.3d at 628-29. The physicians being sued in this case, however, are not ERISA fiduciaries. Cf. Hull v. Fallon, 188 F.3d 939, 943(8th Cir. 1999) (holding state law malpractice claim against a physician was preempted where the physician, acting as the plan administrator, denied a thallium stress test as a plan benefit), cert. denied, 68 U.S.L.W. 3433, 2000 WL 220289 (U.S. Feb. 28, 2000) (No. 99-1083). We conclude that the analysis of Shea I does not apply to the present situation because here we are not dealing with the responsibilities of a plan fiduciary. While our opinion in Shea I altered the administration of an ERISA plan by creating a duty to disclose on the part of plan administrators, a lawsuit to enforce an independent state-created duty to disclose on the part of the physicians (in a situation where the ERISA fiduciary failed to make proper disclosure) will not impact the structure, administration, or economics of the ERISA plan in any meaningful way. None of the above-listed factors favors preemption.

Finally, "[a]s is always the case in our pre-emption jurisprudence, where federal law is said to bar state action in fields of traditional state regulation we have worked on the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." California Div. of Labor Standards Enforcement, 519 U.S. at 325 (internal quotations and alterations omitted). "[T]he historic police powers of the State include the regulation of matters of health and safety." De Buono v. NYSA-ILA Med. and Clincial Servs. Fund, 520 U.S. 806, 814 (1997). State regulation of the ethical responsibilities imposed upon physicians lies within this category. Nothing in ERISA attempts to preempt the entire field of health care or the regulation of professional standards for physicians. See Boyle v. Anderson, 68 F.3d 1093, 1110 (8th Cir. 1995) (stating, "'nothing in the language of the Act or the context of its passage indicates that Congress chose to displace general health care regulations, which historically has been a matter of local concern'") (quoting Travelers Ins. Co., 514 U.S. at 661), cert. denied, 516 U.S. 1173 (1996). After considering the nature and effect of the state law suit involved here and finding that none of the Arkansas Blue Cross and Blue Shield factors

10

listed above favor preemption in this case, we conclude that there is no impermissible connection between the negligent misrepresentation claim and the ERISA plan to justify preemption of count III.

## C. Statute of Limitations

The district court granted summary judgment in favor of Fairview, concluding that Mrs. Shea's attempt to amend the complaint to join this defendant to the suit was untimely. Mrs. Shea argues that the addition of this defendant should relate back to the original date of filing, because the two-year statute of limitations had run by the time she sought to add this defendant.

An amendment to a pleading relates back to the date of the original pleading if the party has received notice of the action so it will not be prejudiced in maintaining a defense on the merits, and if the party knew or should have known that but for a mistake concerning the identity of the proper party, the action would have been brought against this party in the first instance. See Fed. R. Civ. P. 15(c)(3). The determination of whether an amended pleading should be allowed and whether it relates back to the date of the original pleading are matters within the sound discretion of the trial court. See Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330 (1971); see also Marchant v. City of Little Rock, Ark., 741 F.2d 201, 206 (8th Cir. 1984).

The district court found that Mrs. Shea did not bring the case against the wrong parties; she merely asserts she lacked knowledge of the financial and management relationship between the Clinic and Fairview. We agree with the district court that this asserted lack of knowledge does not satisfy the Rule 15 requirement that the plaintiff show an error concerning the identity of the proper party or that Fairview should have known that the suit would have been brought against it but for a mistake in identifying the proper party. There was no mistake here. Mrs. Shea did not bring the suit against the wrong parties. She knew before the expiration of the statute of limitations that

11

Fairview owned the Clinic. She knew the identity of Fairview but chose not to bring Fairview into the suit at that time. We find no abuse of discretion in the district court's conclusion that there is no relation back to the date of the original pleading in this situation.

## D. Motion to Strike

Also pending is the defendants' motion to strike portions of the appellant's brief and appendix, specifically pages 376-504 of Mrs. Shea's appendix and any references to these documents in her brief. Fairview joined the motion but noted that pages 400-427 were before the district court at the time of its summary judgment ruling in March 1998. With this exception, we agree that the other documents at issue are not part of the record on appeal because they were not before the district court at the time it entered its summary judgment ruling. On appeal from a summary judgment ruling, the record before us includes evidentiary materials that were before the trial court when it made the summary judgment ruling, and we will not consider materials that became part of the district court file subsequent to that ruling. Barry v. Barry, 78 F.3d 375, 379 (8th Cir. 1996).

Mrs. Shea asserts that the information was not before the district court in a more timely manner because the doctors refused to produce the documents earlier. When she requested permission of the district court to file a motion to reconsider in light of this new evidence, however, the district court denied the request noting that the summary judgment decision in this case was based on ERISA preemption, which is a question of law, not on the basis of insufficient evidence. Because the appeal involves a question of law, we conclude that Mrs. Shea has not offered a compelling reason why we should consider these records that were not submitted with the initial motion for summary judgment. We therefore grant the defendants' motion to strike material that was not before the district court at the time of its summary judgment ruling. We note

12

that we did not consider the improper references to this material in our determination of this appeal.

## III.

Accordingly, we deny the motion to dismiss the appeal as moot, we grant the motion to strike portions of the appellant's brief and appendix, and we reverse the district court's determination that count III is preempted by ERISA. Because the basis for removal no longer exists, we remand to the district court with instructions to remand count III to the state court. In all other respects, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

13