Lawrence KINGSLEY, Plaintiff,

v.

Michael LANIA, et al., Defendants.

Civil Action No. 02–10566–NG.

United States District Court,
D. Massachusetts.

July 25, 2002.

Lawrence Kingsley, Natick, MA, pro se.

Jonathan E. Tobin, Peter J. Black, Meehan Boyle & Cohen, Boston, MA, for defendants.

## MEMORANDUM OF DECISION AND ORDER ON PLAINTIFF'S MOTION TO REMAND

DEIN, United States Magistrate Judge.

This matter is before the court on plaintiff's Motion to Remand (Docket # 6). For the reasons detailed herein, the motion is ALLOWED.

### STATEMENT OF FACTS

This action involves an incident which occurred at Logan Airport, in Boston, Massachusetts, on October 16, 2001. According to his amended complaint, on that date the plaintiff, Lawrence Kingsley ("Kingsley"), was booked to fly from Boston to Orlando, Florida, on a Delta Airlines flight. *Amended Complaint* at ¶ 4. At the walk-through metal detector, the plaintiff had a disagreement with Delta personnel about the size of his luggage. *Id.* at ¶ 6. He also had a dispute with a Delta manager, the defendant Michael Lania ("Lania"), when the Delta agent allegedly refused to handcheck the plaintiff's camera and Lania was called to intervene. *Id.* at ¶¶ 7–8. During the dispute, the plaintiff "discharged" the camera, "taking the photograph of Lania against a blank wall." *Id.* at ¶ 9. Lania took the film, which was eventually returned but was ruined. *Id.* at ¶¶ 10, 18. The plaintiff was struck from the passenger list, but allowed to fly the next day. *Id.* at ¶¶ 13, 14.

The defendants contend that all actions were taken for security purposes.[1] Kingsley denies that this was Delta's motivation. Kingsley filed suit in the Chelsea District Court for the Commonwealth of Massachusetts asserting the following Massachusetts state law claims: (1) breach of contract for dishonoring his ticket; (2) negligence for the defendants' failure to fulfill their duty to assure the

---

1. Defendants also dispute plaintiff's version of events.

plaintiff's prompt arrival at his destination; (3) conversion of property for depriving the plaintiff of his film at the terminal without due process; and (4) unfair and deceptive business practices, under Massachusetts General Law Chapter 93A, based on the defendants' refusal to honor an otherwise valid ticket for travel by acting under the color of security.

The defendants removed the action to this court alleging that plaintiff's claims were preempted by the Federal Aviation Act of 1958 ("FAA"), 72 Stat. 731, as amended, 49 U.S.C.App. § 1301 et seq. (1998 ed. & Supp. V), as amended by the Federal Airline Deregulation Act ("ADA"), 49 U.S.C. § 41713. *See Defendants' Notice of Removal* (Docket # 1). Plaintiff has moved to remand the case to Chelsea District Court on the grounds that his state court claims have not been preempted.

### STANDARD FOR REMOVAL

The defendants removed this case from the state court pursuant to 28 U.S.C. § 1441(a), which provides that: "any civil action brought in a State Court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States for the district and division embracing the place where such action is pending." "The federal courts have interpreted this statutory grant of power narrowly." *Therrien v. Hamilton,* 881 F.Supp. 76, 78 (D.Mass. 1995), and cases cited. "Thus, upon a motion to remand, the burden is upon the removing party to show that federal subject matter jurisdiction exists, that removal was timely, and that removal was proper.... Removal statutes should be strictly construed against removal and doubts resolved in favor of remand." *Id.*(citations omitted).

In the instant case, the federal court's original jurisdiction is based on the existence of a federal question. *See* 28 U.S.C. § 1441(b) ("Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties."). "[I]n deciding (for removal purposes) whether a case presents a federal 'claim or right,' a court is to ask whether the plaintiff's *claim to relief* rests upon a federal right and the court is to look only to the plaintiff's *complaint* to find the answer." *Hernandez–Agosto v. Romero–Barcelo,* 748 F.2d 1, 2 (1st Cir. 1984) (citing *Gully v. First National Bank,* 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936)). *See also Brough v. United Steelworkers of Am., AFL—CIO,* 437 F.2d 748, 749 (1st Cir.1971) (to support original or removal jurisdiction "it must appear on the face of the complaint that resolution of the case depends upon a federal question"). Moreover, the claim or right "must be an essential element of the plaintiff's properly pleaded claim for relief." 14B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 3722 at 402 (3rd ed.1998). The involvement of a federal issue in a case "does not authorize removal if that involvement arises by way of a federal *defense.*" *Hernandez–Agosto v. Romero–Barcelo,* 748 F.2d at 2.

"A corollary of the well-pleaded complaint rule is the artful pleading doctrine. Stated in the most general terms, the doctrine provides that a plaintiff cannot frustrate a defendant's right of removal by carefully pleading the case without reference to any federal law." 14B Wright, Miller & Cooper, *Federal Practice & Procedure* § 3722 at 436. One type of "artful pleading" involves the "complete-preemption doctrine. When a plaintiff has assert-

ed a cause of action under state law that has been judicially declared completely preempted by federal law, that cause of action—no matter how it may have been set out in the complaint or characterized by the plaintiff—is necessarily federal, and will be recharacterized as federal, thereby permitting removal." *Id.* at 437. *Accord Lebron Diaz v. Gen. Sec. Servs. Corp.,* 93 F.Supp.2d 129, 134 (D.P.R.2000).

In the instant case, Kingsley's complaint speaks in terms of state law claims only—there is no mention of any federal claims or issues. Thus, the issue presented is whether the claims raised by Kingsley have been completely preempted by federal law so as to make removal on the grounds of a federal question proper. I find that they have not.

### STANDARD OF REVIEW: COMPLETE PREEMPTION

■■■ In order to determine whether complete preemption exists, the court must find "that Congress intended federal law to occupy the whole of a regulatory field; that federal judicial power properly extends to actions originally filed in state courts to the extent that they touch upon that field; and that the exercise of such federal power does not offend principles of federalism." *BIW Deceived v. Local S6, Indus. Union of Marine & Shipbuilding Workers of Am., IAMAW District Lodge 4,* 132 F.3d 824, 833–34 (1st Cir.1997). "In complete preemption a federal court finds that Congress desired to control the adjudication of the federal cause of action to such an extent that it did not just provide a defense to the application of state law; rather, it replaced state law with federal law and made it clear that the defendant has the ability to seek adjudication of the

federal claim in a federal forum." Wright, Miller & Cooper, 14B *Federal Practice & Procedure* § 3722.1 at 512 (3d ed.1998). In the instant case, there is no indication that Congress intended to make a federal forum available for every case involving disputes with the airlines. There is no complete preemption of the field so as to allow removal on federal question grounds.

### THE FEDERAL AVIATION ACT

The issue whether federal law preempts state law in connection with disputes between passengers and the airlines has generated much controversy among the courts throughout the country. The history of the federal regulations at issue in the instant case was recently described in the case of *Somes v. United Airlines,* 33 F.Supp.2d 78, 80–81 (D.Mass.1999). In brief, until 1978, the airlines were governed by the Civil Aeronautics Act of 1938 ("CAA") and later the Federal Aviation Act of 1958. These Acts did not expressly preempt state regulation and they each contained a "savings clause" which expressly provided that common law and statutory remedies remained unabridged. *See Somes v. United Airlines,* 33 F.Supp.2d at 80 (citations omitted).

In 1978, Congress enacted the Airline Deregulation Act ("ADA"). The ADA contains a preemption provision which, as amended, provides:

[A] State ... may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier.

49 U.S.C. § 41713(b)(1).[2] "The scope of the ADA's express preemption clause 'has been a source of considerable dispute since

---

**2.** As originally enacted, the preemption provision of the ADA, formerly codified at 49 App. U.S.C. § 1305(a)(1), referred to "rates, routes, or services" but the revision substituting "price" for "rates" was not meant to be substantive. *See American Airlines v. Wolens,* 513 U.S. 219, 223 n. 1, 115 S.Ct. 817, 821 n. 1, 130 L.Ed.2d 715 (1995).

its enactment.' " *Somes,* 33 F.Supp.2d at 81 (quoting *Charas v. Trans World Airlines, Inc.,* 160 F.3d 1259, 1263 (9th Cir. 1998)). The fact that the courts have consistently carved out different types of disputes between passengers and airlines from the preemption clause of the ADA supports the conclusion that even if there is so-called "ordinary preemption" on some claims which makes federal law controlling, there clearly is not "complete preemption" of the field to support removal on the basis of a federal question.

■ The United States Supreme Court held in *American Airlines v. Wolens,* 513 U.S. 219, 232, 115 S.Ct. 817, 825, 130 L.Ed.2d 715 (1995), that private contract disputes are not preempted by the FAA and ADA, as it is not plausible to conclude that "Congress meant to channel into federal courts the business of resolving, pursuant to judicially fashioned federal common law, the range of contract claims relating to airline rates, routes or services." As a result of this decision, all contract actions, including claims of breach of duty to transport a passenger, have been found not to be preempted. *See Chukwu v. Bd. of Directors British Airways,* 889 F.Supp. 12, 14 (D.Mass. 1995), *aff'd mem. sub nom., Azubuko v. Bd. of Directors British Airways,* 101 F.3d 106 (1st Cir.1996). Thus, Kingsley's breach of contract claims against the airline are not preempted.

■ A more difficult question is raised by Kingsley's tort-based claims. The defendants characterize the complaint (both the contract and tort counts) as relating only to safety issues which, the defendants argue, are preempted by federal law.[3]

However, this is too broad a reading of the complaint. In fact, it is the plaintiff's contention that safety issues were not relevant to the altercation at all, as evidenced by the fact that he was promptly rescheduled for another flight. Based on the defendants' interpretation, claims arising from virtually all interactions between the airlines and passengers, or potential passengers, would be preempted, provided that the airlines claimed to be acting to insure passenger safety. This is not the law. *See Somes v. United Airlines, Inc.,* 33 F.Supp.2d at 85–87.

In *Somes,* plaintiff brought a wrongful death action against the airlines when her husband had a heart attack and died en route, alleging that the airline was liable because it did not have an automatic external defibrilator. Although FAA regulations addressed the types of emergency equipment needed on aircraft, the court ruled that "because a requirement that airlines equip flights with enhanced emergency medical kits is distinct from the 'services' Congress had in mind when it adopted the ADA's preemption provision, and does not have a 'forbidden significant effect' on airline 'rates, routes, or services,' it is not expressly preempted." *Id.* at 85. Significantly, the court also found that there was not "field preemption" "which occurs when a comprehensive scheme of federal regulation in a particular field gives rise to the inference that Congress left no room for the states to supplement it. . . ." *Id.* While acknowledging "Congress' indication that airline safety was of paramount importance to it," the court concluded that "neither the Federal Aviation Act nor the regulations promulgated

---

**3.** The defendants rely in part on the fact that the FAA is empowered to establish regulations concerning the screening of passengers and property. *See, e.g.,* 49 U.S.C. § 44901–44903; 14 C.F.R. § 108.5 et seq. While these regulations may be a defense in this case, they do not establish that Congress intended that all disputes between passengers and airlines be decided in federal court. Moreover, the complaint itself rejects the defendants' claim that this case involves issues of safety.

thereunder suggest that it was Congress' 'clear and manifest' purpose to preempt the type of claim Somes asserts. In other words, even if Congress intended to preempt the field of 'air safety,' an issue we need not decide, Somes' claim is not preempted because it falls outside the regulated field." *Id.* at 87.

█ Thus, the inquiry whether a tort based claim is preempted is a fact-specific inquiry. The fact that "airline safety" may be involved or asserted as a defense is not enough to preclude state law claims without further analysis. It is, at a minimum, questionable whether the instant dispute, which took place well before boarding and far from the plane, was the type of dispute which would be preempted. Allowing the state law-based actions to proceed would not have a "forbidden significant effect" on airline services. *See Wolfson v. American Airlines*, 170 F.Supp.2d 87, 94 (D.Mass. 2001) ("Defendants do not convincingly demonstrate that permitting plaintiffs to pursue their claim would undermine the purposes of the [ADA]."). Moreover, a strong argument may be made that even if the instant dispute "might conceivably affect a 'price, route, or service' of an air carrier, ... the causal connection is far too 'tenuous, remote, and peripheral' to warrant preemption in this case." *Id.* at 95 (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 390, 112 S.Ct. 2031, 2040, 119 L.Ed.2d 157 (1992)). To paraphrase *American Airlines v. Wolens*, it is not plausible to conclude that "Congress meant to channel into federal courts the business of resolving, pursuant to judicially fashioned federal common law, the range of [tort] claims" which may arise as a result of the endless number and types of passenger/airlines interactions. The fact that numerous types of tort claims as well as claims relating to "safety" have not been preempted precludes a finding of complete preemption.

The fact that courts differ significantly in their decisions as to what types of claims are preempted by the ADA was recently addressed by some Justices of the United States Supreme Court. The Supreme Court denied certiorari in the case of *Northwest Airlines, Inc. v. Duncan*, 531 U.S. 1058, 121 S.Ct. 650, 148 L.Ed.2d 571 (2000). Justice O'Connor, joined by the Chief Justice and Justice Thomas, dissented, noting a split in the circuits as to the scope of preemption. According to the dissent, several circuits have "held that the term 'service' encompasses 'the prices, schedules, origins and destinations of the point-to-point transportation of passengers, cargo, or mail,'" but not the "provision of in-flight beverages, personal assistance to passengers, the handling of luggage, and similar amenities." *Id.* (citations omitted). Other circuits have "adopted a much broader definition," including coverage of boarding procedures. *Id.* and cases cited. As the dissent argued, the differing results reached in different cases require a more definite statement from the highest court. For present purposes, suffice it to say that it is questionable whether the conduct at issue in this case was of the type intended to be preempted.[4]

The cases throughout the country focus on the specific facts presented, and the results vary widely. *See Seals v. Delta Air Lines, Inc.*, 924 F.Supp. 854, 857–58 (E.D.Tenn.1996) (collecting cases). Under such circumstances, it is impossible to conclude that there is complete preemption

---

4. The First Circuit has not addressed the issue and District Judges have reached different conclusions. *Compare Chukwu v. Bd. of Directors British Airways*, 889 F.Supp. at 13, applying a broad definition of "services," *with Somes v. United Airlines*, 33 F.Supp.2d at 85, applying a narrower view.

defeating a motion to remand where plaintiff's complaint makes no mention of federal law.[5] There are, without question, federal regulations which the defendants may assert in defense of plaintiff's claims. This, however, is insufficient to allow the case to remain in this court. As the court held in *Lebron Diaz*, in language applicable to the instant case:

> plaintiff's preemption argument, at best, asserts "ordinary" preemption, which is insufficient to maintain federal question jurisdiction.... In ordinary preemption, unlike complete preemption, adjudication of plaintiff's state law claim merely requires application of federal substantive law. 14B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 3722.1 (3d ed.1998). That is precisely the circumstances this case presents:

> [plaintiff] pled state law to support the claims in [his] complaint, and defendant answered asserting federal law as a defense.

93 F.Supp.2d at 137.

### CONCLUSION

For the reasons detailed herein, plaintiff's Motion to Remand (Docket # 6) is ALLOWED.

---

5. This conclusion is further supported by the fact that plaintiff's contract claims, which are intertwined with his tort claims, are clearly not preempted. Moreover, all doubts are to be resolved in favor of remand. *Therrien v. Hamilton*, 881 F.Supp. at 78.