Anthony P. GIANNETTI, D.D.S. and Sandee J. Giannetti, Plaintiffs,

v.

William E. MAHONEY, Jr., and Mahoney & Associates, Inc., Defendants.

No. Civ.A. 02–30073–KPN.

United States District Court, D. Massachusetts.

Aug. 23, 2002.

---

Gary B. Liquori, Fennell, Liquori & Powers, West Springfield, MA, Angelo J. Puppolo, Jr., Fennell, Liquori & Powers, West Springfield, MA, for Plaintiffs.

Richard L. Neumeier, McDonough, Hacking & Neumeier, LLP, Boston, MA, for Defendants.

## MEMORANDUM AND ORDER WITH REGARD TO PLAINTIFFS' MOTION TO REMAND (Docket No. 4)

NEIMAN, United States Magistrate Judge.

Anthony Giannetti, D.D.S. ("Dr.Giannetti") and his wife, Sandee Giannetti ("Mrs.Giannetti"), move to remand their complaint against William Mahoney ("Mahoney") and Mahoney & Associates, Inc. (collectively "Defendants") to the Hampden County Superior Court where it origi-

nated. Defendants oppose the motion, stating that the complaint filed by the Giannettis (collectively "Plaintiffs") was properly removed to this court insofar as it involves a federal statute, the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. For the reasons explained below, the court finds Defendants' position wanting and, therefore, will allow Plaintiffs' motion.[1]

### I. BACKGROUND

The background facts are drawn from the complaint. See Brawn v. Coleman, 167 F.Supp.2d 145, 146 (D.Mass.2001). In December of 1996, Dr. Giannetti purchased a group long term disability policy ("the policy") for his employees, including his wife who was a dental hygienist. (Complaint ¶¶ 6 and 12.) Dr. Giannetti intended to purchase the policy, in applicable part, to protect the income generated by Mrs. Giannetti for his small "Mom & Pop" business. (Id. ¶ 9.)

On at least two occasions, Mahoney discussed with Dr. Giannetti the implementation and specifics of coverage pertaining to Mrs. Giannetti. (Id. ¶ 10.) As a result, Plaintiffs assert, Mahoney understood the workings of Dr. Giannetti's business and the need to protect the income generated by Mrs. Giannetti. (Id.) Mahoney indicated that a certain policy underwritten by Reliance Standard Insurance Company ("Reliance") was best for Plaintiffs' needs and would cover the amount of revenue generated should Mrs. Giannetti become totally disabled. (Id. ¶¶ 11 and 13.) Thus, the policy underwritten by Reliance was purchased from Defendants. (Id. ¶¶ 7 and 13.)

The benefits of the Reliance policy were based on a "census" which included an analysis of the "maximum covered earn-

---

1. The parties have consented to the jurisdiction of this court pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73(b).

ings" of employees. (*Id.* ¶ 8.) The census, evidently completed by Plaintiffs, listed Mrs. Giannetti's earnings as $74,000 annually. (*Id.*) The policy's premiums were also based on the census. (*Id.*)

As of May 4, 2000, Mrs. Giannetti became totally disabled and was no longer able to perform her duties as a dental hygienist. (*Id.* ¶ 12.) She timely presented a disability claim to Reliance based on the $74,000 annual figure. (*Id.* ¶ 13.) Instead of paying that amount, Reliance based its payments on Mrs. Giannetti's actual earnings of $26,000. (*Id.* ¶ 14.)

Plaintiffs' complaint, filed in the Superior Court on April 17, 2002, consists of eleven state-law claims, each of which targets Defendants' alleged misrepresentations in procuring the Reliance policy.[2] Although the complaint does not invoke ERISA, Defendants' notice of removal, filed on May 3, 2002 pursuant to 28 U.S.C. § 1441(b), asserts that "this court has original jurisdiction over this action as [it] involves a question of federal law under ERISA." (Docket No. 1 ¶ 5.) On May 16, 2002, Plaintiffs filed the present motion to remand. Defendants thereafter tendered an opposition and, on June 26, 2002, the court heard oral argument.

## II. STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 1441(b), a defendant may remove a civil action presenting "a claim or right arising under the Constitution, treaties or laws of the United States." The federal courts have interpreted this statutory grant of power narrowly. *Therrien v. Hamilton,* 881 F.Supp. 76, 78 (D.Mass.1995) (citation omitted). *Accord Kingsley v. Lania,* —— F.Supp.2d ——, 2002 WL 1858039, at *1 (D.Mass. July 25, 2002). Thus, upon a motion to remand, the burden is upon the removing

party to show that federal subject matter jurisdiction exists. *See BIW Deceived v. Local S6, Indus. Union of Marine & Shipbuilding Workers of Am.,* 132 F.3d 824, 830–31 (1st Cir.1997); *Bally v. Nat'l Collegiate Athletic Ass'n,* 707 F.Supp. 57, 58 (D.Mass.1988). Doubts about the propriety of removing an action should be resolved in favor of remand. *See Kingsley,* 2002 WL 1858039, at *1 (citation omitted).

## III. DISCUSSION

The "threshold issue" in removal matters such as this is subject matter jurisdiction. *See Danca v. Private Health Care Sys., Inc.,* 185 F.3d 1, 4 (1st Cir.1999). Although the legal analysis in this regard is somewhat complex, the parties' respective positions can be summarized succinctly. Plaintiffs assert that this court has no original subject matter jurisdiction because their claims raise no federal question. Defendants, in contrast, assert that, because all of Plaintiffs' claims concern the purchase of a group disability plan, ERISA provides a sufficient basis for such jurisdiction. For the reasons described below, the court deems Plaintiffs to have the better argument.

### A.

The Supreme Court has made clear that, in determining the propriety of removal, the court must normally "look only to [the] *plaintiff's complaint* to" determine whether his *"claim to relief* rests upon a federal right." *Hernandez–Agosto v. Romero–Barcelo,* 748 F.2d 1, 2 (1st Cir.1984) (emphasis in original) (citing, *inter alia, Gully v. First Nat'l Bank,* 299 U.S. 109, 112, 57 S.Ct. 96, 81 L.Ed. 70 (1936), *Franchise Tax Bd. v. Constr. Laborers Vacation Trust,* 463 U.S. 1, 10–11, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983), and *Taylor v.*

---

**2.** Counts I and II are "misrepresentation" claims brought by Dr. Giannetti; Count III is Mrs. Giannetti's "third party beneficiary" claim; Counts IV through VII allege violations of the Massachusetts "Consumer Protection" statute, Mass.Gen.L. ch. 93A; and Counts VIII through XI are "breach of contract" causes of action.

*Anderson,* 234 U.S. 74, 75–76, 34 S.Ct. 724, 58 L.Ed. 1218 (1914)). *See also Danca,* 185 F.3d at 4. This "well pleaded complaint" rule has been described by the Court as follows:

> [W]hether a case is one arising under the Constitution or a law or treaty of the United States, in the sense of the jurisdictional statute ..., must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose.

*Taylor,* 234 U.S. at 75–76, 34 S.Ct. 724.

 There is no question that, on its face, Plaintiffs' complaint fails to raise a federal claim. As described, the complaint sets forth only state-law causes of action which variously claim that Mahoney and his agency breached their promises to provide Plaintiffs a policy based on "income generated" by Mrs. Gianetti rather than her "earnings." Thus, Defendants' removal runs up against the well pleaded complaint rule which, generally, "prohibits the exercise of federal question jurisdiction if no federal claim appears within the four corners of the complaint." *BIW Deceived,* 132 F.3d at 831.

However, as the Supreme Court has explained with specific reference to ERISA, "Congress may so completely preempt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63–64, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). This "complete preemption" exception to the well pleaded complaint rule, the First Circuit has explained, means that "[w]here a claim, though couched in the language of state law, implicates an area of federal law for which Congress intended a particularly powerful preemptive sweep, the cause is deemed federal no matter how pleaded." *Danca,* 185 F.3d at 4. This explanation by the First Circuit came in the context of an ERISA case.[3]

To demonstrate complete preemption here, Defendants would have had to show that Plaintiffs' causes of action, though grounded only in state law, nonetheless fall within the scope of section 502(a) of ERISA, 29 U.S.C. § 1132(a), which sets forth its exclusive civil enforcement provisions. *See Danca,* 185 F.3d at 5.[4] "For

---

**3.** In another context, the First Circuit similarly stated that courts are empowered by the complete preemption doctrine "to look beneath the face of the complaint to divine the underlying nature of a claim, to determine whether the plaintiff has sought to defeat removal by asserting a federal claim under state-law colors, and to act accordingly." *BIW Deceived,* 132 F.3d at 831 (citations omitted). "In other words, a plaintiff may not, by the expedient of artful pleading, defeat a defendant's legitimate right to a federal forum." *Id.* (citation omitted). *See also James v. Bellotti,* 733 F.2d 989, 992 (1st Cir.1984) (holding that so long as a federal claim is "substantial and identifiable" its elements "need not be explicitly and comprehensively recited, and there is nothing to prevent a court from engaging in a little statutory logic to deduce elements implicit on the face of the com-

plaint") (citation and internal quotation marks omitted).

**4.** In pertinent part, section 502(a) of ERISA states as follows:

> A civil action may be brought—
> (1) by a participant or beneficiary—(A) for the relief provided for in subsection (c) of this section, or (B) to recover benefits due to him under the terms of *his plan,* to enforce his rights under the terms of *the plan,* or to clarify his rights to future benefits under the terms of *the plan;*
> (2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;
> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of *the plan,* or (B) to obtain other appropriate equitable relief (i) to redress

this to occur, the state law[s] must be properly characterized as ... 'alternative enforcement mechanism[s]' of ERISA § 502(a) or the terms of an ERISA plan." *Id.* (citing *New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 658, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995)) (footnote omitted).

Defendants, however, have not raised the complete preemption exception in their memorandum of law. Rather, they discuss the narrower concept of "ERISA preemption" under ERISA section 514, 29 U.S.C. § 1144, and, accordingly, rely only on First Circuit decisions where such preemption, not subject matter jurisdiction, was at issue. *See, e.g., Carlo v. Reed Rolled Thread Die Co.*, 49 F.3d 790 (1st Cir.1995); *Vartanian v. Monsanto Co.*, 14 F.3d 697 (1st Cir.1994). *See also Wickman v. Northwestern Nat'l Ins. Co.*, 908 F.2d 1077 (1st Cir.1990).

It seems obvious to the court why Defendants have not pursued a "complete preemption" theory or otherwise invoked ERISA section 502(a). The state claims raised by Plaintiffs cannot be fairly "characterized as ... 'alternative enforcement mechanism[s]' of ERISA § 502(a) or the terms of an ERISA plan." True, the complaint variously refers to the "group disability plan" bought by Dr. Giannetti, (Complaint ¶ 5), which presumably is an ERISA plan, and Defendants attempt to cast the complaint as alleging a miscalculation of benefits under "the plan," (see Defendants' Brief at 7). But what Plaintiffs really challenge in this action is not *the plan* itself—see emphasized portions of section 502(a) cited at note 4, supra—but *the procurement of the plan* by an insurance agent and his agency. (See, e.g., Complaint ¶¶ 19, 23, 26, 32, 38, 44, 50, 54,

59, 64 and 69.) This is a crucial distinction.

Moreover, Defendants' reliance on section 514 of ERISA as a basis for subject matter jurisdiction is misplaced. Section 514 provides, in pertinent part, that ERISA's provisions "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). While Defendants cite section 514 preemption as an affirmative defense, (see Docket No. 2), the First Circuit has explicitly held that a defendant's "raising a colorable ERISA § 514 preemption defense is *no basis for federal jurisdiction.*" *Danca*, 185 F.3d at 4–5 (emphasis added). *See also BIW Deceived*, 132 F.3d at 831. In the words of the Supreme Court, "ERISA preemption, without more, does not convert a state law claim into an action arising under federal law." *Taylor*, 481 U.S. at 64, 107 S.Ct. 1542.

To sum up, Defendants have raised nothing more than a section 514 preemption defense. The "complete preemption" exception to the well-pleaded complaint rule has not been argued by Defendants, nor, if argued, would it apply. Accordingly, Defendants have not borne their burden of showing the existence of federal subject matter jurisdiction. As a result, Plaintiffs' motion to remand must be allowed.

### B.

■ Even assuming that it were appropriate to look to section 514, the court believes that the action is not preempted by that statutory provision. The court engages in this additional analysis not only because the parties have spent considerable energy briefing the section 514 issue,

---

such violations or (ii) to enforce any provisions of this subchapter or the terms of *the plan* ...

29 U.S.C. § 1132(a) (emphasis added).

but because the discussion may help guide the state court grapple with Defendants' preemption defense if pursued any further.

The key question for section 514 purposes is whether Plaintiffs' causes of action "relate to" an employee benefit plan. 29 U.S.C. § 1144(a). In the court's opinion, they do not. Plaintiffs' complaint does not target the insurance company that underwrote the ERISA plan (i.e., Reliance) but, as indicated, consists of run-of-the-mill misrepresentation claims against the agent and agency who allegedly procured the wrong plan.[5] Thus, as in *Cuoco v. Nynex, Inc.,* 722 F.Supp. 884 (D.Mass.1989), where the court held that the plaintiffs' claims survived section 514 preemption, "the relationship between [Plaintiffs and Defendants] is not based directly on the . . . plan but on verbal misrepresentations which were not part of the plan." *Id.* at 886-87.[6] In short, Plaintiffs' claims do not "relate to" an ERISA plan and, accordingly, section 514 preemption would be inappropriate.

The Supreme Judicial Court came to a congruent conclusion in *Pace v. Signal Tech. Corp.,* 417 Mass. 154, 628 N.E.2d 20 (1994), where similar state law claims were found not to be preempted by section 514. The plaintiff in *Pace* was neither seeking benefits under a plan nor arguing that he was wrongfully denied benefits, but was asserting only that the defendant-employer misrepresented that he would receive a

long term disability benefit as part of his buy-out package. *See id.* at 22-24.

To be sure, the First Circuit, while acknowledging *Pace,* has applied section 514 preemption more broadly. For example, in *Carlo,* the state law claim—that the defendant-employer negligently misrepresented the employee's prospective benefits under an early retirement program—was found by the First Circuit to "relate to" an ERISA plan and was therefore preempted. *Id.,* 49 F.3d at 793-94. "ERISA's 'deliberately expansive' preemption language," the First Circuit indicated, "was 'designed to establish pension plan regulation as exclusively a federal concern." *Id.* at 794 (quoting *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 46, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987)) (further citation and quotation marks omitted). Thus, despite the fact that the *Carlo* plaintiffs were not directly seeking coverage under the plan program and despite the fact that they were suing their employer, not the plan trustee, the First Circuit concluded that the damages to be awarded the plaintiffs, if successful, would be measured with reference to the plan itself and, thus, section 514 preemption was appropriate. *See id.* The court came to a similar conclusion in *Vartanian,* 14 F.3d at 700 (finding claims against plaintiff's employer preempted by section 514 because "the existence of the [ERISA] Plan is inseparably connected to any determination of liability under state common law of misrepresentation").

Despite a surface resemblance, the present matter is clearly distinct from *Carlo* and *Vartanian.*[7] First, both *Carlo* and

---

5. That being said, the court is unclear what standing Mrs. Giannetti, a employee, has in the present action. If the claimed damages are indeed for the lost "income" she allegedly "generated" (see Complaint ¶ 65), such funds would appear to flow to her husband's business, not to her.

6. If anything, the relationship here, between the buyer-employer (Dr. Giannetti) and the agent (Defendants) is even further afield than

that in *Cuoco,* where the dispute was between the employer and the plan administrator.

7. This case is also distinguishable from *Wickman,* another decision cited by Defendants. As Defendants' own description of the case makes clear, *Wickman,* unlike here, concerned the "establish[ment]" of an ERISA plan (see Defendants' Brief at 3-4 (citing *Wickman,* 908 F.2d at 1083)), not the procurement of the plan by an insurance agent and his agency.

*Vartanian* concerned claims against employers acting in their ERISA fiduciary capacities. Here, in contrast, Defendants are neither the employer, the plan administrator nor the insurance underwriter; to repeat, Mahoney is an independent insurance agent sued, along with his agency, for alleged misrepresentations in procuring an insurance policy. Second, unlike *Carlo* and *Vartanian,* the misrepresentations alleged in the case at bar occurred prior to the existence of the policy. As such, the instant matter is more akin to *Stetson v. PFL Ins. Co.,* 16 F.Supp.2d 28, 32–33 (D.Me.1998), which distinguished *Vartanian* and *Carlo* on that very basis.[8]

Even so, Defendants argue that the court should find that section 514 preempts misrepresentation-based claims against insurance professionals who allegedly induce policy participation. *See Dedeaux,* 481 U.S. at 44, 107 S.Ct. 1549 (recognizing expansiveness of section 514). The Supreme Court has yet to address the issue, Defendants note, and the question remains unanswered in the First Circuit. *See Golas v. HomeView, Inc.,* 106 F.3d 1, 2 (1st. Cir.1997) (finding it unnecessary to "reach the issue of whether the state law misrepresentation claim [against an insurance broker who plaintiff sought to add to her complaint] is preempted by . . . ERISA"). Unfortunately for Defendants, the court sees no reason to extend section 514 preemption to such an extreme.

For one thing, the court finds Senior Circuit Judge Bownes' concurring opinion in *Golas,* as applied to the facts presented here, convincing. Judge Bownes would have had the First Circuit conclude that section 514 did *not* preempt a misrepre-

sentation claim against an insurance agent. *Id.* at 5–6 (Bownes, J., concurring). In Judge Bownes' view, *Carlo* did not "sweep[ ] all state-law misrepresentation claims into the ERISA corner merely because an employee benefit plan exists." *Id.* at 6. Moreover, as Judge Bownes' noted, *Carlo* was decided before the Supreme Court's decision in *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995), which narrowed the scope of section 514 preemption. *See Golas,* 106 F.3d at 6. "If 'relate to' were taken to extend to the farthest stretch of its indeterminacy," the Supreme Court stated in *Travelers,* "then for all practical purposes preemption would never run its course, for really, universally, relations stop nowhere." *Id.,* 514 U.S. at 655, 115 S.Ct. 1671. *See also Hampers v. W.R. Grace & Co.,* 202 F.3d 44, 53 (1st Cir.2000) (citing Judge Bownes' concurrence in drawing distinction, for preemption purposes, between insurance agent and employer sued for misrepresentation in official capacity as administrator of ERISA plan).

Finally, other circuits which have addressed the issue undercut Defendants' position. At least five circuits, in opinions which this court finds convincing, have held that section 514 does not preempt claims against insurance professionals sued for misrepresentations in procuring an ERISA policy or inducing policy participation. The Fourth Circuit, for example, has determined that a malpractice claim against a benefits management group was not preempted because it did not "relate to" an employee benefit policy. *Coyne &*

---

8. As is true here, *Stetson* involved state law claims against an insurance agent. The court determined that the claims had "merely a 'tenuous, remote or peripheral connection with a covered benefit plan' " and, therefore, as distinct from *Carlo* and *Vartanian,* would

not be preempted by ERISA. *Id.* at 30–32 (quoting *Boston Children's Heart Foundation, Inc. v. Nadal–Ginard,* 73 F.3d 429, 439 (1st Cir.1996)). *See also Beegan v. Associated Press,* 43 F.Supp.2d 70, 76 n. 2 (D.Me.1999) (noting *Stetson* distinction with approval).

*Delany Co. v. Selman*, 98 F.3d 1457, 1466–67 (4th Cir.1996). The Fifth Circuit, too, has concluded that Congress did not intend that section 514 preemption extend to state law tort claims brought against an insurance agent. *Perkins v. Time Ins. Co.*, 898 F.2d 470, 473 (5th Cir.1990). *See also Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 990 (10th Cir.1999) (holding claim for pre-policy misrepresentations not preempted by section 514); *Wilson v. Zoellner*, 114 F.3d 713, 717 (8th Cir.1997) (finding no section 514 preemption of misrepresentation suit against insurance agent). Similarly, the Eleventh Circuit, sitting *en banc*, has found that a state-based fraud claim against an individual insurance agent was not preempted and, in so doing, said the following:

> To immunize insurance agents from personal liability for fraudulent misrepresentation regarding ERISA plans would not promote th[e] objective [of protecting the interests of employees and other beneficiaries]. If ERISA preempts a beneficiary's potential cause of action for misrepresentation, employees, beneficiaries, and employers choosing among various plans will no longer be able to rely on the representations of the insurance agent regarding the terms of the plan.

*Morstein v. Nat'l Ins. Servs., Inc.*, 93 F.3d 715, 723 (11th Cir.1996).[9]

While, in the end, it is unnecessary for this court to resolve Defendants' section 514 argument, it nonetheless believes that

---

**9.** Granted, Defendants have cited some older, contrary authority from the Eleventh Circuit. *See, e.g., Farlow v. Union Cent. Life Ins. Co.*, 874 F.2d 791, 794 (11th Cir.1989); *Belasco v. W.K.P. Wilson & Sons, Inc.*, 833 F.2d 277, 281 (11th Cir.1987). *See also Macomber v. Digital Equip. Corp.*, 865 F.Supp. 65, 71 (D.N.H. 1994) (finding state claims for unpaid severance benefits based upon alleged misconduct prior to adoption of ERISA plan, but seeking benefits under the plan, to be preempted by

---

Plaintiffs' claims would survive that section's preemptive sweep. This is further reason why Plaintiffs' motion to remand will be allowed.

### IV. CONCLUSION

For the reasons stated, Plaintiffs' motion to remand is ALLOWED. The case is hereby REMANDED for further proceedings to the Massachusetts Superior Court in Hampden County.

IT IS SO ORDERED.

---

section 514); *Hollingshead v. Matsen*, 34 Cal. App.4th 525, 40 Cal.Rptr.2d 603, 612 (1995) (concluding that section 514 preemption applies to state misrepresentation claims against agent who allegedly solicited plaintiffs' participation in ERISA plan). However, the court believes that the better view is expressed by the *en banc* court in *Morstein* and the other circuit decisions cited in the text (*Selman, Perkins, Woodworker's Supply* and *Wilson* ).